DECISION AND JOURNAL ENTRY
DeMarkus D. Hodge was convicted, following a jury trial in the Lorain County Court of Common Pleas, of rape, in violation of R.C.2907.02(A)(1)(b). He was also adjudicated a sexual predator in a hearing held immediately after the verdict. Hodge appeals both his conviction and his adjudication as a sexual predator.[1] We overrule Hodge's eight assignments of error, modify the judgment of the trial court and affirm the judgment, as modified.
 I
In December 1996, DeMarkus Hodge ("Hodge") was living with Consuela Fenn ("Fenn") and her three children in Lorain, Ohio. On December 22, 1996, Hodge, Fenn and the children attended a family birthday party. Fenn's three years old daughter, Shaniquay Eisom, ("Shaniquay") left the party with her great grandmother, Flonica Lovejoy ("Lovejoy").
Later that same evening, while Lovejoy was preparing to bathe the child she noticed blood in her underpants. Lovejoy inspected the child and found she "was cut in her vagina in three little spots." Fenn was summoned to Lovejoy's house and called the police. The child was examined at Lorain Community Hospital.[2] On December 24, 1996, two days after Lovejoy found the injuries, Fenn revealed to her family and then to the police that she had witnessed Hodge rape her daughter.
On December 30, 1996, a complaint was filed against Hodge in the Lorain County Juvenile Court.[3] Hodge was charged with the rape of Shaniquay. Under R.C. 2151.26, the juvenile court transferred the case to the Lorain Court of Common Pleas to try Hodge as an adult. On February 19, 1997, the grand jury indicted Hodge for the rape.
On February 10, 1998, a jury found Hodge guilty of rape. The trial court sentenced Hodge to a mandatory sentence of life in prison. Immediately following the verdict the trial court adjudicated Hodge a sexual predator. Hodge timely appealed to this court.
 II
Hodge's first assignment of error states:
 THE TRIAL COURT ERRED IN ADMITTING, AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY OBJECT TO, TESTIMONY AND EVIDENCE FROM TWO EXPERT WITNESSES THAT THEY BELIEVED MS. FENN'S ACCUSATIONS OF DEMARKUS HODGE. THESE ERRORS DENIED DEMARKUS HODGE HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, HE EFFECTIVE ASSISTANCE OF COUNSEL, AND A TRIAL BY AN IMPARTIAL JURY.
 Hodge raises two issues in this assignment of error 1) the trial court's error to allowed testimony from the State's expert witnesses and 2) ineffective assistance of counsel. We will discuss the issues separately.
 A. Expert Witness Testimony
Hodge argues that two of the State's expert witnesses testified as to the veracity and credibility of Fenn's statement about witnessing the rape. The two witnesses at issue are Lauren McAliley ("McAliley"), a nurse practitioner who conducts examinations of children suspected to have been sexually abused and Lolita McDavid M.D. ("Dr. McDavid"), the medical director of the Child Protection program at Rainbow Babies and Childrens Hospital.
McAliley testified on direct examination that the child was examined on January 15, 1997 and again on February 18, 1997. McAliley's initial medical diagnosis after the second examination was a finding that sexual abuse was "possible." However, after McAliley received information that Fenn had witnessed the rape her medical diagnosis changed to a finding that sexual abuse was "probable." Hodge argues that McAliley's testimony was improper because McAliley essentially told the jury that she had concluded that Shaniquay was raped because she believed Fenn.
Hodge also argues that the court's admission of Dr. McDavid's report and her testimony was error. Dr. McDavid's report was admitted into evidence as State's Exhibit #7. The report states:
 I conclude that the grandmother's observations, the child's statements and behaviors, and the findings on physical exam support the allegations of the child's mother (Consuela Fenn) that she witnessed attempted penile-vaginal penetration of Shaniquay. Ms Fenn identifies the perpetrator as her boyfriend, DeMarkus Hodge.
 At trial, Dr. McDavid testified that in her opinion Shaniquay was raped. She arrived at this opinion by relying on the police records, the Lorain Community Hospital records and Rainbow Babies and Childrens Hospital records. Hodge argues that it was improper for Dr. McDavid to testify "we read the police reports and we accept them to be true." Hodge believes that Dr. McDavid's belief in the veracity of the police reports in essence informs the jury as to her belief in the veracity of Fenn's eyewitness statement contained in the police report. We disagree.
The Supreme Court of Ohio has held that "the use of expert testimony in child abuse cases is proper." State v. Boston (1989), 46 Ohio St.3d 108,120, modified by State v. Denver (1992), 64 Ohio St.3d 401, paragraph one of the syllabus. The determination as to the admissibility of expert testimony is within the trial court's discretion and will not be reversed absent an abuse of discretion. Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 616. An abuse of discretion is more than an error of law or judgment; it implies a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Hodge refers to the direct and cross-examination of McAliley to support his argument that the testimony was improper. On direct, the trial court responded to several objections by Hodge that the testimony was in violation of State v. Boston.
In Boston the Ohio Supreme Court considered the issue of whether an expert could comment on the veracity of the victim in a child abuse case. The Court held that "an expert may not testify as to the expert's opinion of the veracity of the statements" of the victim because such testimony "acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is charged with making determinations of veracity and credibility." Boston,46 Ohio St.3d at 128-129, quoting State v. Eastham (1988), 39 Ohio St.3d 307, 312 (H. Brown, J. concurring). The Court found that such testimony was "not only improper — it was egregious, prejudicial and constitutes reversible error." Id. at 128.
In the case sub judice, Hodge's trial counsel objected twice during direct examination on the grounds of Boston.[4] The trial court overruled the objections stating that it was "routine and appropriate for doctors and nurse practitioners to consider a medical history." However, on cross-examination of McAliley, defense counsel engaged in the following line of questioning:
 Q: Once again, your finding of probable sexual abuse is based upon whatever you read, but comes down to whether you believe the mother; is that correct?
 A: In part it comes down to whether I believe the mother, and also follows guidelines for — that we use for making determinations that are fairly well recognized nationally.
 Q: All right. But you would have to define probable would you not [sic] believe the mother, that she actually witnessed an act of sexual intercourse?
A: Yes.
 The trial court stopped the cross-examination to warn defense counsel that he was "getting ready to go that extra step and have [McAliley] say that she believes the testimony or the statements of the mother." Defense counsel requested a hearing, out of the presence of the jury, to discuss the improper testimony he had just elicited. The court denied a hearing on the grounds that defense counsel brought up the testimony in his own line of questioning.
We find that McAliley's direct testimony was proper according toBoston. McAliley testified that as a nurse practitioner she reviews several factors in making a medical diagnosis of sexual abuse. One factor is the history of the child, which in this case would include the mother's eyewitness account of the rape. McAliley testified that the additional history, provided by the statement Fenn made to the police, was only one of many factors she used in making her diagnosis. McAliley's reliance on Fenn's statement was not testimony as to the veracity or credibility of the mother. The particular identity of the alleged rapist was not a determinative factor in McAliley's diagnosis.
As for the testimony elicited on cross-examination, we find that Hodge's trial counsel invited error by pursing that line of questioning. In State ex rel. Bitter v. Missig (1995), 72 Ohio St.3d 249, 254, the Ohio Supreme Court emphasized that "[u]nder the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Having found McAliley's testimony on direct was proper, we find any error with respect to McAliley's testimony on cross-examination was invited by Hodge.[5]
We find that the testimony of McAliley did not violate the Ohio Supreme Court's holding in Boston.
We now turn to Hodge's arguments concerning Dr. McDavid's report and testimony. The record reflects that trial counsel did not object to this evidence. Based on Hodge's failure to object and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine. See State v. Slagle (1992),65 Ohio St.3d 597, 605. In order to prevail under a plain error analysis, Hodge bears the burden of demonstrating the outcome of the trial clearly would have been different but for the error. Crim.R. 52 (B); State v. Cooperrider (1983), 4 Ohio St.3d 226, 227, citing State v.Long (1978), 53 Ohio St.2d 91, 97. The plain error rule "is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice."Cooperrider, 4 Ohio St.3d at 227.
Dr. McDavid's report referred to Fenn's police statement regarding her eyewitness account of the rape. Dr. McDavid referenced Fenn's police statement as one of many factors that the doctor relied on in reaching her medical diagnosis. Dr. McDavid also relied on Lovejoy's statements, the child's statements and behaviors, findings of the physical examinations, police records and hospital records. The record reflects that experts in the field of child abuse rely on these types of factors.
We find Dr. McDavid's opinion as stated in her report was admissible. Expert opinion testimony offered at trial must be based either on personal perception or upon facts in evidence at the trial. Evid.R. 703. Here, the police report was not admitted as independent evidence, therefore the expert was required to have perceived the facts or data. Evid.R. 703. The rule requirement of "perceived by the expert" refers to personal knowledge. State v. Solomon (1991), 59 Ohio St.3d 124, syllabus. In Solomon, the Court determined that the experts should have been allowed to testify concerning the defendant's sanity, since they had personally examined him. Id. at 126. Moreover, the fact that the opinions of the experts were partially based upon hospital records, police reports, and reports of other doctors did not change the ruling, because the experts had personal knowledge. Id. The syllabus of Solomon
holds that "[w]here an expert bases his opinion, in whole or major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." Id. at syllabus.
While Dr. McDavid did testify that she considered the police reports to be true and accurate she did not testify that the statements made by Fenn contained within the police reports were also true and accurate. Belief in the accuracy of what the reporting officer recorded in the report is not, as Hodge argues, a statement to the jury instructing them to believe all of the witness statements contained in the report. Not only do we find no plain error, we find no error in the trial court's admission of Dr. McDavid's report and testimony.
 B. Ineffective Assistance of Counsel
Hodge argues that he was denied the effective assistance of counsel when trial counsel failed to object to the two experts' testimony. However, the record reflects that trial counsel made several on point objections throughout McAliley's testimony. Therefore, we read Hodge's claim as a denial of effective assistance of trial counsel for failing to object to Dr. McDavid's testimony.
A claim of ineffective assistance of counsel will justify reversal of a conviction only if 1) the defendant shows that trial counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and 2) trial counsel's errors prejudiced the defense, in the sense that the errors precluded a fair trial. Stricklandv. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693; see, also,State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To demonstrate prejudice to the defense, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Hamblin (1988), 37 Ohio St.3d 153,155-56.
Having found that Hodge was not substantially prejudiced by the trial court's admission of Dr. McDavid's report and testimony we find that Hodge cannot establish that he was prejudiced by trial counsel's failure to object to such evidence. Therefore, we find no ineffective assistance of counsel respecting Dr. McDavid's report or testimony.
The first assignment of error is overruled.
 III.
Hodge argues in his second, third and fourth assignments of error that his trial counsel was ineffective because trial counsel: 1) failed to object to erroneous jury instructions, 2) failed to adequately inform Hodge's expert witness and 3) failed to object to prosecutorial misconduct in closing arguments. For the sake of clarity and to avoid repetition, we refer to the standard for review for plain error and ineffective assistance of counsel previously stated in our discussion of the first assignment of error. We will separately discuss each ineffective assistance of counsel issue raised by Hodge.
 Failure to Object to Erroneous Jury Instructions TRIAL COUNSEL'S FAILURE TO OBJECT TO THE PLAINLY ERRONEOUS JURY INSTRUCTION ON EXPERT TESTIMONY OPERATED TO DENY DEMARKUS HODGE THE EFFECTIVE ASSISTANCE OF COUNSEL.
 Hodge argues that the trial court failed to fully instruct the members of the jury that they could reach their own conclusions regarding the credibility of Fenn's accusations and that trial counsel's failure to object to the error in the jury instructions deprived Hodge of the effective assistance of counsel. The trial court instructed the jury they were the "judge of the facts, the credibility of the witnesses, and the weight of the evidence." The trial court also instructed the jury that "[y]ou may believe or disbelieve all or any part of the testimony of any witness. It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief."
Hodge argues that the court did not give the full jury instruction regarding expert witness testimony.[6] The court did provide the following instructions regarding expert witnesses:
 Questions were asked in which expert witnesses were permitted to assume that certain facts were true and to give an opinion based upon such assumptions. You must determine whether the assumed facts upon which the experts base their opinions are true. If any assumed fact was not established, you will determine the effect of this failure upon the opinion of the expert.
 As with other experts — I'm sorry — as with other witnesses, upon you alone rests the duty of deciding what weight to give to the testimony of expert witnesses. In determining its weight, you may take into consideration the expert's skill, experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for testing credibility and determining the weight to be given to testimony.
 The Ohio Supreme Court has noted that, "[i]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." Boston, 46 Ohio St.3d at 129, quoting State v. Eastham
(1988), 39 Ohio St.3d 307, 312 (H. Brown, J. concurring). In the present case, Fenn was a witness at trial subject to cross-examination. She testified that she had witnessed Hodge rape her daughter. The jury was instructed to judge the credibility of each witness including Fenn and the expert witnesses. Absent evidence to the contrary, we indulge the presumption that the jury followed the instructions of the trial court. State v. Ferguson (1983), 5 Ohio St.3d 160, 163.
Having found there was no plain error and no error in the trial court's jury instruction, we find that Hodge can not establish that trial counsel's failure to object was ineffective. The second assignment of error is overruled.
 Failure to Adequately Inform Defense Expert Witness TRIAL COUNSEL'S FAILURE TO ADEQUATELY INFORM DEMARKUS HODGE'S EXPERT MEDICAL WITNESS SUBSTANTIALLY PREJUDICED THE DEFENSE, THEREBY DEPRIVING DEMARKUS HODGE OF THE EFFECTIVE ASSISTANCE OF COUNSEL.
 Hodge's expert witness, Dr. Steiner, testified that in his opinion Shaniquay had not been sexually abused. He based his opinion on the December 23, 1996, hospital records; the bill of particulars and the January 15, 1997 Rainbow Babies and Childrens Hospital records. Dr. Steiner erroneously concluded from these records that Fenn waited until April 1997, almost four months after the incident, to report her eyewitness allegations of the rape. Dr. Steiner testified that he was not given the proper date of Fenn's report of the rape. The record reflects that Fenn actually waited only forty hours to report her allegations to the police. Hodge argues that trial counsel was ineffective because counsel failed to detect Dr. Steiner's error prior to trial was error.
We find it unfortunate that it was the prosecutor who informed Dr. Steiner of his error during cross-examination. However, Dr. Steiner did testify that in light of the new information regarding the timing of Fenn's accusations his medical opinion would remain the same. Hodge has not demonstrated that a reasonable probability exists that the outcome of his trial would have been different if Dr. Steiner had been informed of the correct date of Fenn's accusation.
Hodge's third assignment of error is overruled.
 Failure to Object to Prosecutorial Misconduct TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS, WHICH SUBSTANTIALLY PREJUDICED DEMARKUS HODGE'S DEFENSE AND DENIED HIM DUE PROCESS OF LAW.
 Hodge argues that his trial counsel's assistance was ineffective because counsel failed to object to statements made by the prosecuting attorney during closing arguments. Hodge cites several passages of the prosecutor's closing argument in which he contends the prosecutor's remarks were improper. The passages refer to the credibility of witnesses, characterizations of battered women's syndrome and improper characterizations of defendant and defense counsel.
The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Moore (1998),81 Ohio St.3d 22, 33, citing State v. Smith (1984), 14 Ohio St.3d 13,14. To establish prejudice, an accused must show that there is a reasonable probability that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. State v. Loza
(1994), 71 Ohio St.3d 61, 83.
In the present case, trial counsel failed to object to the alleged improper statements made during closing arguments. The failure to object to prosecutorial misconduct "does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision." State v. Gumm (1995), 73 Ohio St.3d 413, 428. Assumingarguendo that trial counsel's failure to object constitutes deficient performance, Hodge still must demonstrate that counsel's failure to object prejudiced his defense. As stated above under the first assignment of error, to show ineffective assistance of counsel, defendant must make a twofold showing of deficient performance with respect to errors so serious as to render the result of the trial unreliable or fundamentally unfair. Strickland, 466 U.S. at 687, 80 L.Ed.2d at 693;Bradley, 42 Ohio St.3d at paragraph two of the syllabus.
 (1) Credibility of Witnesses
It is well established that "[w]hile it is improper for the prosecutor to express to the jury his or her personal opinion about the credibility of any witness, the prosecutor is permitted to make a fair comment on the credibility of witnesses based upon their testimony in open court."State v. Mundy (1994), 99 Ohio App.3d 275, 304, citing State v. Price
(1979), 60 Ohio St.2d 136, 140. The jury is not invited to go beyond the evidence presented at trial. Id. The comments spoken by the prosecuting attorney here were in the context of contrasting the defense and prosecution witnesses. The prosecutor did not claim to have personal knowledge of any witness's truthfulness. We find the prosecutor's comments on the credibility of witnesses were within the bounds ofPrice. See, Price, 60 Ohio St.2d at 140 and paragraphs three of the syllabus.
 (2) Battered Women's Syndrome
Hodge argues that the prosecutor's comments characterizing Fenn as a victim of Battered Women's Syndrome were improper. The State did not present expert testimony regarding Battered Women's Syndrome. However, the record reflects that the State did present evidence that Hodge was controlling and abusive in his relationship with Fenn. Fenn's great aunt testified that Hodge forced himself into Fenn's house, locked her in the house and threatened her to stay inside the house. Fenn testified that she was frightened of Hodge because to her during most of their relationship, Hodge was abusive. We find the prosecutor's comments in closing argument, characterizing Fenn as an abused, battered woman appear to be a proper interpretation of the evidence presented at trial. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166 (holding a prosecutor may not allude to matters not supported by admissible evidence).
 (3) Comments on Character of Defendant and Defense counsel
Hodge also argues the prosecutor made improper arguments regarding his character and the character of the defense counsel. Having previously stated the test for prosecutorial misconduct, we recognize that prosecutors are normally entitled to wide latitude in their remarks.State v. Mason (1998), 82 Ohio St.3d 144, 162.
The conduct of the prosecuting attorney during the trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402, 405. "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."Lott, 51 Ohio St.3d at 166, quoting Smith v. Phillips (1982), 455 U.S. 209,219, 71 L.Ed.2d 78, 87.
We have reviewed the prosecutor's closing arguments and find that even absent any possible prosecutorial misconduct, the jury would have found Hodge guilty. Further, the trial court did instruct the jury that counsel's arguments were not evidence. Under the circumstances, we simply cannot conclude that the prosecutor's comments rose to the level of prejudicial error. See Mason, 82 Ohio St.3d at 162; Keenan,66 Ohio St.3d at 410-411; State v. Benson (1992), 81 Ohio App.3d 697, 702-705. Accordingly, Hodge's fourth assignment of error is overruled.
 IV
Hodge's fifth assignment of error states:
 THE CUMULATIVE EFFECT OF THE ERRORS IN DEMARKUS HODGE'S CASE PRODUCED A TRIAL SETTING THAT WAS FUNDAMENTALLY UNFAIR, THEREBY DENYING HIM DUE PROCESS OF LAW.
 Hodge contends that we must determine whether the cumulative effect of the claimed errors in assignments of error one through four, merit reversal of his conviction and sentence. The Ohio Supreme Court recognized the doctrine of cumulative error in State v. DeMarco
(1987), 31 Ohio St.3d 191, paragraph two of the syllabus. "Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner (1995), 74 Ohio St.3d 49, 64. The doctrine of cumulative error is not applicable unless there are multiple instances of harmless error. Id.
Having previously found no error in Hodge's first four assignments of error we find that the doctrine of cumulative error does not apply. SeeState v. Webb (1994), 70 Ohio St.3d 325, 335. The fifth assignment of error is overruled.
 V
Hodge's sixth assignment of error states:
 DEMARKUS HODGE'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Hodge argues his conviction for rape was against the manifest weight of the evidence. In determining whether a conviction was against the manifest weight of the evidence, an appellate court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340; State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 3. In effect, an appellate court which overturns a jury verdict on manifest weight of the evidence grounds acts as a "thirteenth juror," setting aside the resolution of evidence and testimony as found by the trier of fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Overturning a conviction on these grounds is reserved for the exceptional case where the evidence weighs heavily in favor of the defendant. State v. Otten, 33 Ohio App.3d at 340.
To find Hodge guilty, the jury had to find that Hodge "engage[d] in sexual conduct with another," and "[t]he other person is less than thirteen years of age." R.C. 2907.02(A)(1)(b). Sexual conduct is defined in R.C. 2907.01 as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * * Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
Lovejoy testified at trial that she noticed Shaniquay exhibiting unusual behavior at the birthday party. She decided to take Shaniquay home with her. After they left the party, Lovejoy stated the child kept repeating that daddy DeMarkus was going to cut off all her hair. While preparing the child for a bath, Lovejoy noticed blood in Shaniquay's underpants and sent for Fenn. Lovejoy remembered that upon seeing the injuries Fenn stated "[o]h my God, I don't know — I didn't know it was this bad." Lovejoy testified that Shaniquay was cut three times on her vagina. The police were called and Shaniqauy was taken to the hospital.
Fenn testified that she witnessed Hodge rape her daughter. She responded to a moaning sound coming from her daughter's bedroom. Once in the room she found Hodge on top of Shaniquay. She testified "his legs was in between her legs. Her legs was like spread out * * * His left hand was on her mouth and his right hand was like down by her head." Fenn described seeing Hodge penetrate her daughter and the court estimated the depth, which Fenn was indicating with her hands, to be about one to one and a half inches.
McAliley and Dr. McDavid testified the medical diagnosis was a finding that rape was probable. They testified that the medical diagnosis was based on a combination of factors including the mother's observations.
After reviewing the evidence, we cannot state as a matter of law that the trier of fact clearly lost its way and created a manifest miscarriage of justice or that a rational trier of fact could not have found Hodge guilty beyond a reasonable doubt, as the testimony of Fenn, Lovejoy, McAliley and Dr. McDavid supports Hodge's conviction. Accordingly, we cannot find the conviction of rape is against the manifest weight of the evidence. Hodge's sixth assignment of error is overruled.
 VI
Hodge's seventh assignment of error states:
 THE TRIAL COURT'S DESIGNATION OF DEMARKUS HODGE AS A SEXUAL PREDATOR VIOLATED HIS RIGHT TO DUE PROCESS BECAUSE IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 Hodge asserts that the evidence before the trial court was insufficient for it to find that he is a sexual predator. In determining whether the evidence was sufficient to support his adjudication as a sexual predator, this court must review the evidence before the trial court. We must determine whether the evidence before the trial court was clear and convincing enough that a reasonable fact finder could have determined that Hodge was a sexual predator, as defined by R.C. 2950.01(E). Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus; R.C. 2950.09(B)(3). See, also, State v. Cartwright
(Nov. 25, 1998), Lorain App. No. 97CA006782, unreported, at 6.
In deciding whether the individual was one who "is likely to engage in the future in one or more sexually oriented offenses," R.C. 2950.01(E), the trial court is to consider the factors listed in R.C. 2950.09(B)(2). In this case, the following factors are relevant:
The offender's age;
* * *
 (c) The age of the victim of the of the sexually oriented offense for which sentence [was] imposed;
* * *
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence [was] imposed, displayed cruelty or made one or more threats of cruelty;
 Any additional behavioral characteristics that contribute to the offender's conduct.
 The trial judge indicated that Hodge's age, the age of the victim, the fact that force was used, Hodge's pattern of behavior, and Hodge's other behavioral characteristics were clear and convincing evidence that Hodge is a sexual predator. Those findings correspond to the factors identified in R.C. 2950.09(B)(2)(a), (c), (h), (i) and (j). On review of the evidence, we find there is sufficient clear and convincing evidence to support those findings. Based on the application of these factors to Hodge, there was sufficient evidence that, if believed, could convince a reasonable factfinder that Hodge is a sexual predator. Hodge's seventh assignment of error is overruled.
 VII
Hodge's eighth assignment of error states:
 TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY OBJECT TO THE APPLICATION OF AN UNCONSTITUTIONAL STATUTE TO DEMARKUS HODGE, AND THE COURT COMMITTED PLAIN ERROR BY APPLYING THE UNCONSTITUTIONAL SEXUAL PREDATOR LAW.
 Hodge argues he was denied the effective assistance of counsel when counsel failed to object to the constitutionality of R.C. 2950 and that the trial court's application of the sexual predator law was unconstitutional. The record reflects that at the beginning of the sexual predator hearing, Hodge's counsel informed the court that he wanted to "make certain that it is in the entry that the defendant reserves all constitutional rights upon appeal on that particular issue." The trial court responded, "well, the Court is going to consider your statement as an oral motion to dismiss any sexual predator hearing on constitutional grounds, and I'm going to deny that Motion." It is clear that Hodge's counsel communicated to the trial court that any application of the sexual predator law to his client was unconstitutional. Counsel's comment was sufficient to preserve the matter for appeal, thus his performance in this aspect was not deficient.
Hodge argues that R.C. 2950 is unconstitutional because it: 1) infringes upon the right to privacy, to obtain property and to pursue happiness; 2) violates prohibition against ex post facto laws; 3) constitutes cruel and unusual punishment; 4) constitutes double jeopardy; 5) is void for vagueness; and 6) violates the equal Protection Clauses of the Ohio and United States Constitutions.
We recently addressed all of these issues and found R.C. 2950 constitutional. State v. Swaney (Oct. 4, 2000) Lorain App. No. 99CA007525, unreported, at 3-6. We now review that discussion in relation to Hodge's individual arguments.
 Right to Privacy, Obtain Property and Pursue Happiness
Hodge argues that the classification of sexual predator and the community notification requirements of R.C. 2950 violate his constitutional rights to privacy, freedom to travel and freedom of association. The right to privacy under Section 1, Article I of the Ohio Constitution parallels the privacy rights protected under theFourteenth Amendment to the United States Constitution. Direct Plumbing Supply Co.v. Dayton (1941), 138 Ohio St. 540, 544-545. An offender's conviction is public record and "the right to privacy encompasses only personal information and not information readily available to the public." Statev. Williams (2000), 88 Ohio St.3d 513, 526. Williams further held that R.C. 2950 does not violate a convicted sex offender's constitutional right of privacy. Id.
The community notification requirements of R.C. 2950.11(A) arise only after the offender obtains temporary or permanent residence in a community. Williams, 88 Ohio St.3d at 526. Therefore, the notification requirements do not impair the offender's right to travel. Id. at 530-531. Similarly, the statute does not specifically prohibit an offender's pursuit of happiness. If a particular citizen interferes with this right the offender may seek redress through this state's tort and criminal laws.
 B. Ex Post Facto Law
Hodge argues that the sexual predator labeling requirements are retroactive and in violation of prohibition against ex post facto laws. A purely remedial statute that is applied retroactively does not violate the constitutional prohibition of retroactive laws. Van Fossen v.Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 107, superseded on other grounds by R.C. 2745.01. "[T]he registration and verification provisions[of R.C. 2950] are remedial in nature." State v. Cook (1998),83 Ohio St.3d 404, 413. Cook held the requirements were de minimis
procedural requirements necessary to achieve the goals of the statute.Id. at 412. The registration and verification requirements of R.C. 2950 are constitutional. Id. at paragraphs one and two of the syllabus.
In Cook the Court looked at the intent of the statute and found no statutory language evidencing intent to punish. Cook,83 Ohio St.3d at 418. Cook also reviewed the effects of the statute and found that the verification provisions were narrowly tailored to deal with the danger and recidivism levels of sexual offenders and the notification provisions were narrowly tailored to provide information only to people necessary to protect the public. Id. at 422. R.C. 2950 is constitutional because it serves the remedial purpose of protecting the public. Id. at 423.
 C. Double Jeopardy
Hodge argues the labeling and notification requirements of R.C. 2950 imposes multiple punishments for the same offense. The requirements of R.C. 2950 are not criminal or a punishment. Cook,83 Ohio St.3d at 416-419; see, also, Williams, 88 Ohio St.3d at 528. The government's conduct does not involve criminal punishment and therefore, does not violate the Double Jeopardy clause. Williams, 88 Ohio St.3d at 528.
 D. Cruel and Unusual Punishment
Hodge argues that R.C. 2950 constitutes cruel and unusual punishment under the Ohio and United States Constitutions. Having already held that the requirements of R.C. 2950 are not a punishment but remedial, we find the same requirements can not be cruel and unusual punishment. State v.Steckman (Feb. 9, 1999), Lorain App. No. 97CA006996, unreported, at 8.
 E. Equal Protection Rights of United States and Ohio Constitutions
Hodge argues prisoners are a suspect class entitled to a strict scrutiny review of their fundamental right of equal protection under the law. R.C. 2950 does not involve a suspect class or a fundamental right.Williams, 88 Ohio St.3d at 530-531. Race, alienage and ancestry are the only classifications recognized as suspect. Id. at 530, citingMassachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307, 312,49 L.Ed.2d 520, 524, fn. 4. Convicted sexual predators are not a suspect class. Williams, 88 Ohio St.3d at 530.
The proper analysis is the rational basis test not strict scrutiny.Williams, 88 Ohio St.3d at 531. Hodge bears the burden under a rational basis test to "negative every conceivable basis before an equal protection challenge will be upheld." Id. Hodge offers no such arguments. We agree with Williams that an equal protection challenge can not be upheld in the absence of arguments that negate the reasons that produce "every conceivable basis" for R.C. 2950. Id. at 531.
Hodge's eighth assignment of error is overruled.
 VIII.
Judgment entry of conviction and sentence are modified to reflect that Hodge was found guilty of rape[7]. Having overruled all eight assignments of error, the judgment of the trial court is affirmed, as modified.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BACHELDER
BATCHELDER, P. J. WHITMORE, J. CONCURS BAIRD, J.
CONCURS IN JUDGMENT ONLY
[1] Hodge's initial appeal was dismissed for failure to comply with Loc.R. 2(C). He later filed an application to reopen his appeal, which was granted.
[2] On December 22, 1996, Fenn took the child to Elyria Memorial Hospital. The hospital did not have the proper instruments to examine the child and sent them to Lorain Community Hospital. A general examination was performed at Lorain Community Hospital. Upon recommendation, the child was again generally examined on January 15, 1997, at Rainbow Babies and Childrens Hospital, however, a detailed examination under sedation was performed at Rainbow Babies and Childrens Hospital on February 18, 1997.
[3] Hodge was seventeen years old at the time of the incident.
[4] The present case is distinguished from Boston in that the statement at issue is not from a child declarant. The victim's mother, Fenn, reported to the police that she witnessed Hodge rape her daughter. Hodge argues that the experts improperly testified as to the veracity of Fenn's statement to the police.
[5] Hodge's appellate counsel did not raise the issue of trial counsel's invited error on cross-examination as a ground for ineffective assistance of counsel.
[6] Hodge asserts that the proper instruction was:
 [q]uestions have been asked of the expert witnesses after they had disclosed the underlying facts or data. It is for you, the jury, to decide if such facts or data on which they based their opinions are true, and you will decide the weight to give such evidence.
4 Ohio Jury Instructions (1998), Section 5.70.
[7] The judgment entry of Hodge's conviction and sentence states that Hodge "pleaded guilty" to the charge of rape. We note that the judgment entry is incorrect because Hodge pleaded not guilty and a jury found Hodge guilty of rape.