*544
 
 Bettman, J.
 

 The question here involved is whether an ordinance of the city of Dayton requiring sellers of plumbing fixtures to attach certain labels to fixtures sold, and to report weekly to the public authorities all sales of fixtures, the names and addresses of purchasers, and places of proposed installation, is a valid exercise of the police power. This question is presented upon the pleadings in the case, which contain the admitted terms of the ordinance. Evidence of the operation of a previous similar ordinance was submitted to the courts below, but is not before this court. Nevertheless, it will be here assumed in discussing the validity of the present ordinance that in practice this legislation would be of some assistance in the discovery of illegal, uninspected plumbing installations — which is all that the aforesaid evidence is claimed to have shown.
 

 The grounds of the appellees’ attack upon the ordinance are that it violates the 14th Amendment to the United States Constitution and Section 19 of Article I of the Constitution of Ohio.
 

 In dealing with the validity of an Ohio legislative enactment, state or municipal, it is well to recall that, against the invasion of government upon their fundamental individual rights, the people of Ohio have been wont in the past to rely for their protection upon guaranties written into both the state and federal Constitutions. Running through former decisions of this court are instances of the joint invocation of the Fourteenth Amendment to the Constitution of the United States and of Sections 1, 2, 16 and 19, Article I of the Constitution of Ohio.
 
 Olds
 
 v.
 
 Klotz,
 
 131 Ohio St., 447, 3 N. E. (2d), 371;
 
 Holsman
 
 v.
 
 Thomas,
 
 112 Ohio St., 397, 147 N. E., 750, 39 A. L. R., 760;
 
 Pritz
 
 v.
 
 Messer,
 
 112 Ohio St., 628, 149 N. E., 30. The “due course of law” clause of Section 16, Article I of the Ohio Constitution, has been considered the equivalent• of the “due process of law” clause in the Fourteenth Amendment.
 
 *545
 

 Wilson
 
 v.
 
 City of Zanesville,
 
 130 Ohio St., 286, 199 N. E., 187. Likewise, Section 1, Article I, with its guaranty of inalienable rights, Section 2, Article I, with its assurance of equality before the law, and Section 19, Article I, guaranteeing the inviolability of private property, have run parallel with the protections of the Fourteenth Amendment to the United States Constitution. Decisions' of the federal Supreme Court have often been quoted by this court as giving the true meaning of the guaranties of the Ohio Bill of Rights.
 
 Wilson
 
 v.
 
 City of Zanesville, supra; Steele, Hopkins & Meredith Co.
 
 v.
 
 Miller,
 
 92 Ohio St., 115, 110 N. E., 648, L. R. A. 1916C, 1023, Ann. Cas. 1917C, 926. As was pointed out in the
 
 Steele case,
 
 page 126, “The guaranties of Sections 1, 2 and 19 of the Bill of Bights in the Constitution of Ohio are similar to those contained in the amendment to the federal Constitution referred to [the 14th Amendment].” If in the midst of current trends toward regimentation of persons and property, this long history of parallelism seems threatened by a narrowing federal interpretation of federal guaranties, it is well to remember that Ohio is a sovereign state and that the fundamental guaranties of the Ohio Bill of Bights have undiminished vitality. Decision here may be and is bottomed on those guaranties.
 

 Does the ordinance in question offend against the guaranties of the rights of private property and its corrollary — freedom of contract — contained in Sections 1, 16 and 19, Article I of the Ohio Constitution? In general, it is well recognized that all the guaranties of the Ohio Bill of Bights are subject to a reasonable, non-arbitrary exercise of the “police power” of the state or municipality, when exercised in the interest of public health, safety, morals or welfare.
 
 Olds
 
 v. Klotz,
 
 supra; Youngstown
 
 v.
 
 Kahn Bros. Building Co.,
 
 112 Ohio St., 654, 148 N. E., 842, 43 A. L. R., 662;
 
 Wilson
 
 v.
 
 City of Zanesville, supra; City of Dayton
 
 v.
 
 S. S. Kresge Co.,
 
 114 Ohio St., 624, 151 N. E., 775, 53 A. L.
 
 *546
 
 R., 916. This general doctrine of the limitation of individual rights by the needs of public welfare is expressly recognized in the words of Section 19 of the Bill of Rights:
 

 “Private property shall ever be held inviolate, but subservient to the public welfare.”
 

 These words, which contain a fundamental tenet of our political heritage, express the delicate balance between the rights of the governed and the power of a free government. Each element of this balance is modified and restricted by the presence of the other, yet neither can be extinguished. No government could long continue to function if all property rights were unqualifiedly inviolate. But, on the other hand, the constitutional guaranty of the right of private property would be hollow if all legislation enacted in the name of the public welfare were
 
 per se
 
 valid. To be truly in the public, welfare within the meaning of Section 19, and thus superior to private property rights, any legislation must be reasonable, not arbitrary, and must confer upon the public a benefit commensurate with its burdens upon private property. This general doctrine was comprehensively stated by this court in
 
 Froelich
 
 v.
 
 City of Cleveland,
 
 99 Ohio St., 376, at 391, 124 N. E., 212: “It must be remembered that neither the state in the passage of general laws, nor the municipality in the passage of local laws, may make any regulations which are unreasonable. The means adopted must be suitable to the ends in view, they must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation.” And the final decision upon these questions of reasonableness and degree of interference — and the final setting of the balance between public welfare and private right — must in any system of constitutional government be the function of the judicial arm of govern
 
 *547
 
 ment.
 
 State
 
 v.
 
 Boone,
 
 84 Ohio St., 346, 95 N. E., 924, 39 L. R. A. (N. S.), 1015, Ann. Cas. 1912C, 683.
 

 What are the public benefits which arise out of the ordinance now in question? How is this legislation in the public welfare? In answer, it is claimed that this ordinance protects public health by aiding in the prevention of dangerously faulty installations of plumbing. Admittedly there is a potential danger to public health in faulty plumbing. The city of Dayton, like most of our cities, in recognition of this danger, has, by an ordinance not here in question, required permits to be obtained for plumbing installation and the inspection thereof by plumbing inspectors. This legislation might be said to create a primary zone of defense of the public health, inasmuch as it deals directly with the problem of faulty installation. Additional protection from this same danger is provided by another ordinance requiring all connections to the city sewer and water supply systems to be made by licensed plumbers. Since the doing of such work by licensed plumbers creates a probability of proper installation, this second ordinance indirectly protects the point of danger and may be said to provide a secondary zone of defense. The city of Dayton has now enacted a third, ordinance, the one here contested, which, by requiring a report of all sales of plumbing fixtures, it is claimed will aid in the effective enforcement of the primary and secondary ordinances. It is apparent that this third zone of defense, since it operates only through the other ordinances mentioned, has a more remote relation to the public health. The increment to the public welfare thus contributed by the contested ordinance is measured therefore only by the net increase in public protection beyond that already given by existing ordinances dealing with plumbing installations.
 

 What are the burdens imposed by this ordinance upon private property rights and freedom of contract? First, the purchaser of any plumbing fixture is required
 
 *548
 
 to disclose his name and address and the place of the proposed installation. The vendor must record these facts and report them every week to the city plumbing inspector. This requires a complete disclosure of the vendor’s business in plumbing fixtures. Application for the required “stickers” must be made by anyone selling or installing fixtures which do not already have a “sticker” attached, and involves the disclosure of the applicant’s name and address, the type of fixtures to be sold, and the applicant’s right to sell or install them. These restrictions infringe upon the basic right of the owner of any plumbing fixture to deal and contract with regard to his property as he sees fit. It should be noted, moreover, that the burden of this ordinance is cumulative and is superimposed upon prior infringement of private property rights occasioned by the two other ordinances already protecting the public against the single danger of faulty plumbing.
 

 Is there an “interference with private rights beyond the necessities of the situation”? Is the ordinance “unduly oppressive upon individuals ” ? It is our judgment that these questions must be answered in the affirmative. In order to add a third protection to a danger point already doubly guarded, the ordinance requires extensive acts not only by the installer or purchaser of plumbing fixtures but also by the supplier thereof, who has no connection at all with installations, good or bad. Plumbing fixtures are not dangerous
 
 instrumentalities;
 
 they are not wild animals; they are not poison. Even a faulty installation of plumbing fixtures may not always be dangerous to the public, but may be merely inconvenient to the owner. If this ordinance were valid, a similar ordinance could then be enacted to require stickers for and full reports of all sales of lumber, brick, stone or steel going into the repair or construction of buildings — for faulty installation of these materials can equally endanger the public, and build
 
 *549
 
 ing inspection laws are as common as plumbing codes. Yet what, in itself, is more innocuous than a beam, a timber, or, indeed, a plumbing fixture? It is the use thereof that might be dangerous and to protect against a possibly dangerous use the present ordinance too greatly encumbers both the user and the supplier of materials. The burdens of the ordinance are unduly oppressive upon individuals and interfere with the rights of private property and the freedom of contract beyond the necessities of the situation. The ordinance is therefore held to be invalid as in contravention of Section 19, Article I, of the Constitution of Ohio.
 

 If it be urged that the decision here is one in the domain of policy, it should be answered that policy is not here determined — merely that there has been an unreasonable exercise of legislative power. For the courts to recoil from determining the point at which legislative enactments become unreasonable, arbitrary and unnecessary and therefore unconstitutional would be to abdicate their function of seeing to it that ours shall continue to be a government of law, achieved by the balance of power between the legislative, executive and judicial arms of the state. To those who may be irked at the power of the courts to declare invalid legislative acts which hold for them some special advantage and which they may sincerely think to be in the public interest, it should be recalled that in the long run it is more to their benefit to lose the immediate advantage, but preserve their fundamental rights of private property and freedom of contract, guaranteed by the Ohio Bill of Bights.
 

 The judgment of the Court of Appeals holding invalid' the ordinance here involved is accordingly affirmed.
 

 -
 
 Judgment affirmed.
 

 Weygandt, C. J., Matthias and Hart, JJ., concur.
 

 Turner, Williams and Zimmerman, JJ., dissent.