IN RE APPEAL OF CRABTREE FROM A DECISION OF THE STATE PERSONNEL BD. OF REVIEW, APPELLANT.

IN RE APPEAL OF KNISELEY FROM A DECISION OF THE STATE PERSONNEL BD. OF REVIEW, APPELLANT.

IN RE APPEAL OF LAMBERT FROM A DECISION OF THE STATE PERSONNEL BD. OF REVIEW, APPELLANT.

IN RE APPEAL OF VAN GUNDY FROM A DECISION OF THE STATE PERSONNEL BD. OF REVIEW, APPELLANT.

IN RE APPEAL OF LAMBERT FROM A DECISION OF THE STATE PERSONNEL BD. OF REVIEW, APPELLANT.

IN RE APPEAL OF NOYES FROM A DECISION OF THE STATE PERSONNEL BD. OF REVIEW, APPELLANT.

(Nos. 8430, 8431, 8432, 8433,, 8434 & 8435—Decided December 13, 1966.)

*Messrs. Lucas, Prendergast, Albright & Warren* and *Mr. John A. Brown,* for appellants.

*Mr. William B. Saxbe,* attorney general, and *Mr. William M. Hoiles,* for appellee State Personnel Board of Review.

Troop, J. John L. Crabtree and five others were employed by the Department of Natural Resources of the state of Ohio and classified as either 8001 Laborer I or 8002 Laborer II. They were dismissed on January 31, 1964, and following the termination of their services attempted an appeal to the State Personnel Board of Review. The board found that they were members of the unclassified service and were, therefore, without a right of appeal. The decision of the board was taken to the Court of Common Pleas of Franklin County which court affirmed the decision of the board, and from that decision this appeal is taken. The appeals were consolidated in the Common Pleas Court and in this court.

In the course of the hearing before the State Personnel Board of Review, the Attorney General made a motion to dismiss the appeals of the former employees on the ground that the board had no jurisdiction under Section 143.012, Revised Code, to hear appeals of employees in the unclassified service. The motion was sustained. The motion of the Attorney General was supported by evidence designed to show that the former employees were removed from the classified service by an action

of the former Civil Service Commission under date of January 12, 1950, as authorized by a section of the General Code, comparable to and essentially the same as the present Section 143.08 (A) (12), Revised Code. The action taken by the commission, as included in the minutes of that body, reads as follows:

" * * * The commission directed that appointments made under the classifications of 8001, Laborer I, and 8002, Laborer II, in the state service be considered as in the unclassified service under the provisions of Section 486-8A-12 of the General Code since it was decided that it would be impractical at this time to include such unskilled labor positions in the competitive classified service. However, this action may be rescinded if at a later time, it could be found practicable to include either or both such classifications in the competitive classified service. * * *"

Section 143.27, Revised Code, provides that all employees in the classified service shall have tenure in their positions. Section 143.08, Revised Code, divides the civil service into two basic categories, the unclassified and classified service. In turn, subsection (B) divides the classified group into (1) the competitive class, and (2) the unskilled labor class. Included in the competitive class are all those positions wherein it is practicable to determine the merit and fitness of an applicant by competitive examinations. Appointments to the unskilled labor positions are made without competitive examinations from lists of eligible people compiled by the Director of Personnel, or a local commission, after examination or testing with respect to age, residence, physical condition, ability to labor, etc. The unskilled laborer is nonetheless in the classified service and entitled to the protection afforded civil servants, including the processes required by Section 143.27, Revised Code.

All this seems reasonably clear until we are confronted with a peculiar, if not contradictory, provision contained in Section 143.08 (A) (12), which is the center of the problem in the instant case. The applicable parts of the subsection are as follows:

"(A) The unclassified service shall comprise the following positions, which shall not be included in the classified service, * * *

" * * *

"(12) * * * such unskilled labor positions as the director of state personnel * * * may find it impracticable to include in the competitive classified service; provided such exemptions shall be by order of the commission or the director, duly entered on the record of the commission or the director with the reasons for each such exemption."

Unskilled laborers are not intended to be included in the competitive classified service as is clear from the act of the Legislature. The language referring to unskilled laborers contained in the above quotation—"impracticable to include in the competitive classified service"—seems flatly contradictory. Some years ago, the Attorney General was called upon to interpret this language and to resolve the conflict and he held, 3 Opinions of Attorney General (1915) 2227, No. 1024, that the term "competitive classified service" as used in the paragraph was intended to mean and does mean simply "classified service." Such an interpretation is reasonable and is accepted.

Our problem still remains in spite of this interpretation. In the instant case, removal of the unskilled laborers from the classified service to the unclassified service was by act of the former Civil Service Commission under statutory authority the same as that given to the director by the present law. The last action officially taken was on January 12, 1950. The Attorney General argues that the law has been the same for fifty years "and the policy" the same "for at least the last forty-one of those years." In all that period of time there has been no contest of the law or challenge of the policy and practice, says the Attorney General. Certainly, there are no reported cases.

A square look at the provision reveals an important direction attached to the power of transfer or exclusion. The director, or the old Civil Service Commission, may exclude unskilled laborers "by order," "duly entered on the record"—"with the reasons for each such exemption." An examination of the January 12, 1950, order, under which the state of Ohio is still operating, reveals that the commission simply found it impractical to include such unskilled laborers under Classifications 8001 and 8002, Laborer I and Laborer II, in the competitive classified service. The order is totally void of any "reasons for each such exemption."

Prior orders of the commission at least make some effort

to comply with the requirement of a finding and a supporting reason therefor. On April 20, 1923, they found difficulty in giving practical examinations "fairly testing relative capacity" of unskilled laborers. Included in the minutes is the statement that the problem was due to excessive turnover in common, unskilled labor positions in the State Highway Department together with the temporary character of the majority of such positions.

On August 8, 1930, the commission excluded unskilled laborers earning $4 per day or less from the classified service but retained those earning in excess of $4 per day except where due to local conditions they were specifically placed in the unclassified group. The supporting reason for the order isn't clearly stated, but the language suggests troublesome variations in rate and labor supply throughout the state.

In the December 23, 1941, order, several reasons are stated. A national emergency due to war, a rise in the cost of living, and excessive turnover incident to the difficulty in securing common laborers, are facts advanced in support of the order. Peculiar conditions are recognized in Cuyahoga and Hamilton Counties and the order varied to meet them.

These attempts to comply with all the requirements of the statute are sharply in contrast to the order of January 12, 1950, which makes no attempt whatever to suggest a reason for the exclusion. The net result of such an order is to exclude all unskilled laborers in state service from the protection of the civil service statutes because it is more convenient or because policy has developed that way by accident or design.

The error of attempting wholesale transfer of unskilled workers to the unclassified service is further emphasized by a close look at the involved statutory language. Section 143.08 (B) (2), Revised Code, refers to the unskilled labor "class," whereas Section 143.08 (A) (12) says "such unskilled labor positions." It seems perfectly clear that *positions* are transferable, not an entire unskilled *class*. Specifically, not the entire Classes 8001, Laborer I, and 8002, Laborer II, but only certain positions within the class and that for a particular reason.

The Legislature intended that unskilled laborers should be included in the classified service or it would never have enacted Section 143.08 (B) (2), Revised Code. To hold that at the same

time a provision was enacted that would permit an administrative officer or body to nullify the section by administrative fiat is beyond the point of reason. If unskilled laborers are to be removed from the classified service, it should be by legislative act. Until such time as there is legislative change, the statute providing for noncompetitive examinations and appointment from lists of qualified applicants should be followed and only distinct and unusual situations be met by administrative orders supported by adequate reasons.

The question presented by this case has never been squarely faced before. The Attorney General says that at least as far back as 1923 the unskilled labor class has been covered by a Civil Service Commission order "placing the unskilled labor class in the unclassified service." If that proposition be accurate, then over that period of time there has been complete and wholesale disregard for the provisions of Section 143.08 (B) (2), Revised Code, and nobody, court or otherwise, has considered and ruled upon the practice. The opinion of the Attorney General in 1915, *supra,* considered unskilled laborers employed by a county and held that they were in classified service unless removed by a Civil Service Commission order.

In the case of *State, ex rel. Stein,* v. *Department of Highways* (1940) 136 Ohio St. 252, one Joseph Stein asserted that he was an unskilled laborer and in the classified service. The Supreme Court held (page 255) that his amended petition did not disclose any averment that could be construed as compliance with the statutory registration requirement (Section 143.08 (B) (2), Revised Code), and that, therefore, he could not claim tenure. The effect of the peculiar or conflicting provision in the (A) (12) part of the section is not even mentioned.

So in this court's decision in *In re Appeal of Knox* (May 3, 1966. No. 8298). The court was concerned with the position of only one man held to be in the unclassified service as provided in Section 143.08 (A) (7), Revised Code. The court followed two cases, *State, ex rel. Baker,* v. *Wichert, Mayor* (1953), 159 Ohio St. 50, involving only one person, a clerk employed by a municipality, and *State, ex rel. Lynch,* v. *Taylor, Director of Dept. of Liquor Control* (1940), 136 Ohio St. 417, the subject being one man, a clerk in a state liquor store.

No one of these cases involves a state employee covered by

an administrative order removing an unskilled labor classification from the classified service to the unclassified service because the commission, or director, found "it impracticable to include in the competitive classified service."

The principle that a statute should not be interpreted so as to make it ineffective, urged by the Attorney General, is accepted and approved. He cites 50 Ohio Jurisprudence 2d, 206, Section 226, and the opinion of the Attorney General, *supra*. The support is adequate as applied, but the quoted rule cannot be said to justify an interpretation that results in the total nullification of a substantial portion of a legislative act providing civil service protection for unskilled state employees. It is a far less reasonable interpretation to suggest that the Legislature on the one hand gave civil service protection to the unskilled labor class and at the same time gave an administrative officer or body the right to take that protection away from the class than it is to suggest that the protection was conferred on the class and only certain positions, for good reason, could be removed from it by administrative order.

So radical a change in policy calls for legislative change. If it be left to interpretation by judicial decision, that should come from the Supreme Court of Ohio.

The Common Pleas Court and the State Personnel Board of Review were in error in holding that these appellants were in the unclassified service and without a right of appeal, the decision of the board having been predicated upon an incomplete and improper order of the Civil Service Commission. The judgment of the Common Pleas Court is reversed and the case remanded for further proceeding according to law.

*Judgment reversed and cause remanded.*

BRYANT, P. J., and DUFFY, J., concur.