**SMITH, Appellant, et al.**

v.

**JONES et al., Appellees.**

[Cite as *Smith v. Jones,* 175 Ohio App.3d 705, 2007-Ohio-6708.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–06–47.

Decided Dec. 17, 2007.

706

Ronald J. Mauer, for appellant.

Jim Petro, Attorney General, Benjamin W. Crider, and Lee M. Smith, for appellee, Ohio Bureau of Workers' Compensation.

---

ROGERS, Presiding Judge.

{¶ 1} Plaintiff-appellant, April J. Smith, appeals the judgment of the Hancock County Court of Common Pleas, denying her motion for partial summary judgment and finding that R.C. 4123.931 is constitutional. On appeal, Smith asserts that the trial court erred by finding that R.C. 4123.931 does not violate Sections 2, 5, 16, and 19, Article I of the Ohio Constitution. Based on the following, we affirm the judgment of the trial court.

{¶ 2} In April 2003, Smith was injured in an automobile accident when the vehicle she was driving collided with a vehicle driven by defendant, Carolyn S. Jones, during the course and scope of her employment with Hancock County.

{¶ 3} In May 2003, Smith filed a claim for benefits with the Ohio Bureau of Workers' Compensation ("the BWC"), which the BWC allowed.[1]

{¶ 4} In March 2005, Smith filed a negligence claim against Jones. Additionally, Smith alleged that the workers' compensation subrogation statutes, R.C. 4123.93 and 4123.931, were unconstitutional on their face and as applied to her, and she requested a declaratory judgment.

{¶ 5} In October 2005, the BWC filed a cross-claim against Smith, seeking subrogation for past medical benefits and compensation paid to her, as well as for future estimated payments.

{¶ 6} In December 2005, Smith moved for partial summary judgment for a declaration that R.C. 4123.931 was unconstitutional.

---

1. Smith named the BWC as a defendant in her March 2005 complaint, but the BWC later moved to be realigned as a named party plaintiff, which the trial court granted.

{¶ 7} In April 2006, Jones was dismissed from the action after settling with Smith.

{¶ 8} In August 2006, the trial court denied Smith's December 2005 motion for partial summary judgment, finding:

R.C. 4123.931 * * * does not violate Sections 2, 5, 16, and 19 of Article I of the Ohio Constitution. Accordingly, no genuine issue as to any material fact remains to be litigated as between Smith and the BWC. Construing the evidence most strongly in the BWC's favor, reasonable minds can only reach a conclusion that is adverse to [Smith]. Thus, Smith is not entitled to judgment as a matter of law on her claim that [R.C.] 4123.931 is unconstitutional. * * * As a result of the Court's determination that the statute is constitutional, both facially and as applied to this case, the Court dismisses with prejudice [Smith's request for] declaratory judgment that the statute is unconstitutional. Given that the pending claims against Defendant Jones have been settled by the parties, the only matter pending before the Court is the amount, if any, of the subrogation lien applied to the settlement. Given that [R.C.] 4123.931 specifically provides methods for the allocation of this amount, the Court dismisses the remainder of the cause of action in this case.

{¶ 9} It is from this judgment that Smith appeals, presenting the following assignments of error for our review.[2]

### Assignment of Error No. I

The trial court erred as a matter of law by finding that R.C. 4123.931 does not violate the right of due course of law and right to a remedy under Section 16, Article I of the Ohio Constitution and the protections of the Private Property and the Takings clause in Section 19, Article I of the Ohio Constitution.

### Assignment of Error No. II

The trial court erred as a matter of law in failing to find that R.C. 4123.931 violates the Equal Protection clause contained in Section 2, Article I of the Ohio Constitution.

### Assignment of Error No. III

The trial court erred as a matter of law in failing to find that R.C. 4123.931 violates the right to trial by jury guaranteed by Section 5, Article I of the Ohio Constitution.

---

2. We note that the issues Smith raises here have also been raised in an unrelated case currently accepted for review by the Ohio Supreme Court. See *Groch v. Gen. Motors Corp.,* 112 Ohio St.3d 1416, 2006-Ohio-6712, 859 N.E.2d 556.

{¶ 10} We apply the following standards of review throughout. Additionally, before we discuss Smith's assignments of error, we provide an overview of R.C. 4123.931.

*Standards of Review*

### A. Summary Judgment

{¶ 11} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.* (1999), 131 Ohio App.3d 172, 175, 722 N.E.2d 108. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, 774 N.E.2d 775, ¶ 25, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150. Summary judgment is appropriate when, looking at the evidence as a whole, (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138.

{¶ 12} The party moving for summary judgment has the initial burden of producing some evidence that affirmatively demonstrates the lack of a genuine issue of material fact. *State ex rel. Burnes v. Athens Cty. Clerk of Courts* (1998), 83 Ohio St.3d 523, 524, 700 N.E.2d 1260; see also *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue and may not rest on the mere allegations or denials of their pleadings. *Id.*

### B. Constitutionality

{¶ 13} All legislative enactments are presumed constitutional, and the party challenging such an enactment bears the burden of proving otherwise beyond a reasonable doubt. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 17, citing *Klein v. Leis*, 99 Ohio St.3d 537, 2003-Ohio-4779, 795 N.E.2d 633, ¶ 4. A party may challenge the constitutionality of a statute either on its face or as applied to a particular set of facts. *Harold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citing *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph four of the syllabus.

{¶ 14} A facial challenge is the most difficult to bring successfully because the challenger must demonstrate that no set of circumstances exists under which the statute would be valid. *Harold*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at ¶ 37, citing *United States v. Salerno* (1987), 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697. The fact that a statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. Id. Conversely, when a statute is challenged as applied, the challenger must establish by clear and convincing evidence an existing set of facts that renders the statute invalid when applied to those facts. *Harold*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, at ¶ 38, citing *Belden*, 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, at paragraph six of the syllabus.

### *Overview of R.C. 4123.931*

{¶ 15} Under the current version of R.C. 4123.931, the payment of workers' compensation or benefits "creates a right of recovery in favor of a statutory subrogee against a third party, and the statutory subrogee is subrogated to the rights of a claimant against that third party." [3] R.C. 4123.931(A). The legislature first established a statutory right of subrogation for workers' compensation benefits in 1993 under former R.C. 4123.93, but later amended it in 1995, separating it into two divisions: R.C. 4123.93 and 4123.931.

{¶ 16} Subsequently, in *Holeton v. Crouse Cartage Co.*, the Ohio Supreme Court held that the 1995 amended version violated the Due Process, Takings, and Equal Protection Clauses of the Ohio Constitution for two reasons: (1) it effectuated a potential windfall for the statutory subrogee by giving it a current collectible interest in estimated future benefits that the claimant might never receive and (2) it subjected the entire amount of any settlement to the statutory subrogee's reimbursement right without allowing the claimant to demonstrate that portions of the settlement did not duplicate the workers' compensation benefits received. (2001), 92 Ohio St.3d 115, 123–128, 748 N.E.2d 1111.[4]

{¶ 17} In response to *Holeton*, the legislature enacted Senate Bill 227, effective April 9, 2003, establishing the current version of R.C. 4123.931.[5] R.C. 4123.931

---

3. A statutory subrogee includes the administrator of workers' compensation, self-insured employers, and employers who contract for direct payment of medical services under R.C. 4121.44(L). R.C. 4123.93(B).

4. Consequently, the legislature abolished the 1995 amended version and reverted to the original 1993 version of R.C. 4123.93. However, in *Modzelewski v. Yellow Freight Sys., Inc.*, the Ohio Supreme Court held that the 1993 version was also unconstitutional based upon the rationale set forth in *Holeton*. 102 Ohio St.3d 192, 2004-Ohio-2365, 808 N.E.2d 381, ¶ 20.

5. The current version of R.C. 4123.93 only contains definitions of the terms utilized in R.C. 4123.931.

now provides a pro rata formula to determine the amount allocated to each party and applies to both settled claims and judgment awards of damages. See R.C. 4123.931(B) and (D)(1). Under the formula, the claimant's amount is equal to the amount of uncompensated damages divided by the sum of the statutory subrogee's subrogation interest and the uncompensated damages, multiplied by the net amount recovered. The statutory subrogee's amount is equal to the subrogation interest divided by the sum of the subrogation interest and the uncompensated damages, multiplied by the net amount recovered. R.C. 4123.931(B) and (D)(1). Uncompensated damages are "the claimant's demonstrated or proven damages minus the statutory subrogee's subrogation interest." R.C. 4123.93(F). The subrogation interest is the "past, present, and estimated future payments" made to the claimant by the statutory subrogee. R.C. 4123.93(D). The net amount recovered refers to the "amount of any award, settlement, compromise, or recovery by a claimant against a third party, minus the attorney's fees, costs, or other expenses incurred by the claimant in securing the award, settlement, compromise, or recovery," but does not include punitive damages. R.C. 4123.93(E).

{¶ 18} Further, when a claimant, statutory subrogee, and third party settle or attempt to settle the claimant's claim against the third party, R.C. 4123.931(B) provides:

If while attempting to settle, the claimant and statutory subrogee cannot agree to the allocation of the net amount recovered, the claimant and statutory subrogee may file a request with the administrator of workers' compensation for a conference to be conducted by a designee appointed by the administrator, or the claimant and statutory subrogee may agree to utilize any other binding or non-binding alternative dispute resolution process.

The claimant and statutory subrogee shall pay equal shares of the fees and expenses of utilizing an alternative dispute resolution process, unless they agree to pay those fees and expenses in another manner. The administrator shall not assess any fees to a claimant or statutory subrogee for a conference conducted by the administrator's designee.

{¶ 19} However, when a claimant's action against a third party proceeds to trial and damages are awarded, both of the following apply:

(1) The claimant shall receive an amount equal to the uncompensated damages divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered, and the statutory subrogee shall receive an amount equal to the subrogation interest divided by the sum of the subrogation interest plus the uncompensated damages, multiplied by the net amount recovered.

(2) The court in a nonjury action shall make findings of fact, and the jury in a jury action shall return a general verdict accompanied by answers to interrogatories that specify the following:

(a) The total amount of the compensatory damages;

(b) The portion of the compensatory damages specified pursuant to division (D)(2)(a) of this section that represents economic loss;

(c) The portion of the compensatory damages specified pursuant to division (D)(2)(a) of this section that represents noneconomic loss.

R.C. 4123.931(D).

{¶ 20} Once the allocation amounts are determined by settlement or trial, the claimant may establish an interest-bearing trust account for the full amount of the future estimated payments portion, if any, of the statutory subrogee's interest. Upon notice from the statutory subrogee at six-month intervals, the claimant must then reimburse the statutory subrogee from the trust account for payments actually made. R.C. 4123.931(E)(3). In the event that future payments are no longer necessary, such as by the death of the claimant, settlement of the underlying claim, or any occurrence rendering workers' compensation payments unnecessary, any amount remaining in the trust after final reimbursement to the statutory subrogee is paid to the claimant or the claimant's estate. R.C. 4123.931(E)(1). Conversely, if the claimant opts to forego establishing a trust account, he or she must pay the full amount of the future estimated payments to the statutory subrogee within 30 days after the receipt of funds from the third party. R.C. 4123.931(F).

{¶ 21} With these provisions in mind, we turn to Smith's assignments of error.

*Assignment of Error No. I*

{¶ 22} In her first assignment of error, Smith asserts that R.C. 4123.931 violates the Due Course of Law, Right to Remedy, and Takings Clauses in Sections 16 and 19, Article I of the Ohio Constitution. Specifically, Smith contends that the formula assumes that all of the workers' compensation benefits were duplicated in the tort recovery regardless of whether a double recovery occurred and allows the statutory subrogee to recover its subrogation interest from all uncompensated damages regardless of whether it matches the benefits paid; that the jury interrogatories are not specific enough to allow a distinction of damages; and that estimated future benefits constitute a windfall to the BWC and are undefined by R.C. 4123.931.

{¶ 23} Section 16, Article I of the Ohio Constitution contains the right of due course of law and the right to a remedy, providing:

All courts shall be open, and every person for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

Section 16, Article I is equivalent to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 544, 21 O.O. 422, 38 N.E.2d 70. Likewise, Section 19, Article I of the Ohio Constitution, guaranteeing the inviolability of private property, is equivalent to the Takings Clause of the U.S. Constitution, id. at 545, 21 O.O. 422, 38 N.E.2d 70, and provides:

Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

{¶ 24} When the constitutionality of workers' compensation statutes is challenged, courts must apply the rational-basis test. *State ex rel. Doersam v. Indus. Comm.* (1989), 45 Ohio St.3d 115, 543 N.E.2d 1169. Under the rational-basis test, a statute must be upheld " 'if it bears a rational relationship to a legitimate governmental interest.' " *Discount Cellular, Inc., v. Pub. Util. Comm.,* 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 32, quoting *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181. The party challenging the statute bears the burden "to negate every conceivable basis that might support the legislation." Id. at ¶ 33, citing *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1999), 87 Ohio St.3d 55, 58, 717 N.E.2d 286.

{¶ 25} *Holeton* acknowledged that the state has a legitimate interest in preventing double recoveries and, to that end, may prevent a tort victim "from recovering twice for the same item of loss or type of damage, once from the collateral source and again from the tortfeasor." 92 Ohio St.3d at 121–122, 748 N.E.2d 1111. However, "[w]hether expressed in terms of the right to private property, remedy, or due process, the claimant-plaintiff has a constitutionally protected interest in his or her tort recovery to the extent that it does not duplicate the * * * bureau's compensation outlay." Id. at 122, 748 N.E.2d 1111. Thus, to satisfy the rational-basis test, R.C. 4123.931 must satisfy the constitutional requirement that "subrogable or recoupable items be matched to those losses or types of damages that the claimant actually recovered from the tortfeasor." Id.

{¶ 26} In the case sub judice, regarding the issues of double recovery and matching, Smith argues that the formula assumes that the benefits paid by the BWC were duplicated in the recovery and disregards the matching requirement. Recently, the Fourth District rejected similar arguments in *McKinley v. Ohio Bur. of Workers' Comp.*, 170 Ohio App.3d 161, 2006-Ohio-5271, 866 N.E.2d 527. We find *McKinley*'s analysis regarding these particular issues persuasive and adopt it in this case:

R.C. 4123.931 provides several methods for determining how a recovery by the worker's compensation claimant against a third-party tortfeasor is to be distributed. First, the claimant has the option of joining the [BWC] or a self-insured employer as a party to the underlying tort action. Once the subrogee is a party, if the parties are unable to agree on a settlement amount under R.C. 4123.931(B), the matter may proceed to trial, where all issues can be heard. The statutory subrogee presents evidence at trial regarding its expenditures on behalf of the claimant and other evidence regarding its entitlement for future damages. The subrogation amount can be determined as part of the damages proven through use of jury interrogatories submitted by the court pursuant to Civ.R. 49(B).

Second, if the claimant does not join the [BWC] or a self-insured employer as a party to the underlying tort action, and has settled with the tortfeasor without the participation of the [BWC] or the self-insured employer, the [BWC] and the claimant may choose to use the aforementioned formula or some other mutually agreed-to allocation, or may seek a declaratory judgment to determine the respective amounts to be recovered by the claimant and the subrogee. If the case proceeds to trial, the claimant may present evidence as to what portions of the amount recovered represent a double recovery. Both of these options ensure that the claimant will obtain a full and fair hearing.

Third, the parties may lawfully settle at any time. R.C. 4123.931(B) provides the parties with the option to use the formula or any other agreed-upon allocation of the net amount recovered. The parties are free to agree to any allocation they deem proper. If the parties cannot agree, the issue can be resolved at trial. This option also provides a claimant with the opportunity for a full, fair hearing. Therefore, each of the procedures set forth in R.C. 4123.931 provides a claimant with due process when determining how a recovery by the workers' compensation claimant against a third-party tortfeasor is to be distributed.

Id. at ¶ 26–28.

{¶ 27} Additionally, the formula ensures that the subrogation acts only on the amounts that the subrogee has compensated or will compensate through workers' compensation by utilizing a pro rata distribution. Therefore, the subrogee

recoups only that percentage of its payments reflected in the net amount recovered. Thus, we find that the formula under R.C. 4123.931 does not violate Sections 16 and 19, Article I of the Ohio Constitution.

{¶ 28} Regarding the specificity of the jury interrogatories, Smith argues that the jury interrogatories fail to account for economic damages that might not be compensable by the workers' compensation scheme and, therefore, allow subrogation of amounts that do not constitute a double recovery. R.C. 4123.931(D)(2) requires the jury to state the total amount of compensatory damages, the portion of the compensatory damages that constitute economic loss, and the portion of the compensatory damages that constitute noneconomic loss. Although Smith asserts that the jury interrogatories are inadequate, *Holeton* approved the use of jury interrogatories "indicating that the award or judgment represents different types of damages" mandated under former R.C. 4123.931(D). 92 Ohio St.3d at 125, 748 N.E.2d 1111. Like the jury interrogatories under the former R.C. 4123.931, those specified under the current R.C. 4123.931 also provide for representation of different types of damages—economic and noneconomic—and, therefore, are constitutionally adequate under *Holeton*. This is particularly so, given that nothing in R.C. 4123.931(D)(2) prohibits a party from requesting, or the trial court from identifying, further categories on the jury interrogatories under Civ.R. 49(B) in those instances when the economic damages might include additional items not compensable under the workers' compensation scheme.[6] Instead, R.C. 4123.931(D)(2) requires that at the very least, the jury specify the economic and noneconomic portions of the compensatory damages in the interrogatories. Thus, we find that the jury interrogatories mandated under R.C. 4123.931(D) do not violate the Due Process, Right to a Remedy, and Takings Clauses of the Ohio Constitution and certainly do not preclude additional interrogatories that may be needed and appropriate.

{¶ 29} Regarding future estimated payments, Smith argues that they are undefined by R.C. 4123.931 and constitute a windfall for the BWC. Although Smith correctly states that R.C. 4123.931 does not define future estimated payments, she fails to demonstrate how this renders the statute unconstitutional. Likewise, Smith's arguments that R.C. 4123.931 does not identify who calculates the estimated future payments and that the subrogee mysteriously configures them are unfounded. R.C. 4123.931 makes clear that the amount will either be determined by the parties, by the administrator's designee, through an alternative dispute resolution process during settlement, or proven to a judge or jury at

---

6. Under Civ.R. 49(B), a trial court has discretion as to the content of the interrogatories submitted to the jury. *Clark v. Doe* (1997), 119 Ohio App.3d 296, 304, 695 N.E.2d 276, citing *Ragone v. Vitali & Beltrami Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645.

trial. And, in the event that future estimated payments are overestimated, the safeguards discussed below prevent the subrogee from receiving a windfall.

{¶ 30} Unlike under former R.C. 4123.931, under the current version, any future estimated payments are set aside in the trust account established and maintained by the claimant at the claimant's option, the subrogee has no control over the trust account, the subrogee is reimbursed only for amounts actually expended up to the amount placed in the trust, the subrogee bears the burden of notifying the claimant every six months of reimbursements sought, and any overestimated amount is returned to the claimant or the claimant's estate. See R.C. 4123.931(E)(1). Thus, the possibility of the subrogee receiving a windfall is eliminated because the subrogee is prevented from obtaining a current collectible interest in the future estimated payments. *Holeton* favorably recognized a similar method utilized by Minnesota in its workers' compensation subrogation statute. 92 Ohio St.3d at 124–125, 748 N.E.2d 1111.

{¶ 31} Further, while less burdensome alternatives to the trust account option may be available to eliminate the risk of overestimating future payments, the legislature "is not bound to pick the least burdensome alternative that can be devised. It is enough that the scheme proposed is reasonable and does not impose any irrational or arbitrary risk upon the claimant." *Fry v. Surf City, Inc.*, 137 Ohio Misc.2d 6, 2006-Ohio-3092, 851 N.E.2d 573, ¶ 18, citing *FCC v. Beach Communications, Inc.* (1993), 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211. Our role is only to determine whether the current method chosen by the legislature is clearly unconstitutional. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323.

{¶ 32} Additionally, the claimant has the option to forego establishing a trust account under R.C. 4123.931(E) and, upon the claimant's so choosing, R.C. 4123.931(F) requires him or her to pay the entire estimated future payments to the subrogee within 30 days of receipt of the settlement, judgment, or jury award. Although R.C. 4123.931(F) may resemble the process under former R.C. 4123.931, which *Holeton* deemed unconstitutional because it gives the subrogee a current collectible interest in future estimated payments that the claimant may never actually receive, it is distinguishable from the former statute. Unlike the former statute, which required the claimant to give all estimated future payments to the subrogee, R.C. 4123.931(F) gives the claimant a choice between giving the subrogee the future estimated payments up front or establishing a trust account for the estimated future payments. Thus, we find that R.C. 4123.931(E) and 4123.931(F) do not violate Sections 16 and 19, Article I of the Ohio Constitution.

{¶ 33} Accordingly, we overrule Smith's first assignment of error.

*Assignment of Error No. II*

{¶ 34} In her second assignment of error, Smith asserts that R.C. 4123.931 violates the Equal Protection Clause in Section 2, Article I of the Ohio Constitution. Specifically, Smith contends that claimants who proceed to trial are denied the option of utilizing alternatives to the pro rata formula afforded to claimants who settle. We disagree.

{¶ 35} The Equal Protection Clause found in Section 2, Article I of the Ohio Constitution provides:

All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly.

{¶ 36} Ohio's Equal Protection Clause is "functionally equivalent" to that under the U.S. Constitution. *Desenco,* 84 Ohio St.3d at 544, 706 N.E.2d 323. Equal protection requires that similarly situated individuals be treated similarly. *Discount Cellular, Inc. v. Pub. Util. Comm.,* 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 31. The rational-basis test also applies to equal-protection challenges regarding the constitutionality of workers' compensation statutes. *Doersam,* 45 Ohio St.3d 115, 543 N.E.2d 1169. Thus, if the classification rationally furthers a legitimate state interest, the statute must be upheld as constitutional. *Desenco,* 84 Ohio St.3d at 544, 706 N.E.2d 323, citing *Valvoline Instant Oil Change, Inc. v. Tracy* (1997), 78 Ohio St.3d 53, 55, 676 N.E.2d 114.

{¶ 37} Here, Smith argues that R.C. 4123.931 violates the equal protection clause by arbitrarily distinguishing between claimants who settle and those who proceed to trial because claimants who proceed to trial are forced to utilize the pro rata formula, while claimants who settle may utilize alternative methods to calculate the net amount recovered. Under former R.C. 4123.931, claimants who proceeded to trial were able to demonstrate that their tort recovery did not duplicate their workers' compensation benefits, as reflected by jury interrogatories, whereas claimants who settled were precluded from doing so. Instead, the entire settlement amount was subjected to the subrogation interest regardless of whether the workers' compensation benefits were actually duplicated in the settlement amount, which *Holeton* deemed a violation of equal protection. 92 Ohio St.3d at 125–128, 748 N.E.2d 1111.

{¶ 38} The current R.C. 4123.931 abolished this distinction by providing a formula to be used in both settlement and trial and by affording claimants who settle, as well as claimants who proceed to trial, a method by which to demonstrate that their tort recovery did not duplicate their workers' compensation

benefits where appropriate. In settlement, this result is achieved by allowing the parties to use an alternative agreed-upon allocation to best meet the particular factual scenario, whereas the judge's requisite fact finding or jury interrogatories achieves the same result at trial. Smith's assertion that the mechanisms available during settlement must also be made at trial, were we to accept it, would eradicate the distinction between settlement and trial. Regardless of the different mechanisms for doing so, claimants in both settlement and trial must be given the opportunity to demonstrate that their tort recovery did not duplicate their workers' compensation, which R.C. 4123.931 allows. See, e.g., *McKinley,* 170 Ohio App.3d 161, 2006-Ohio-5271, 866 N.E.2d 527, ¶ 35. Thus, we find that R.C. 4123.931 is a rational response to a legitimate state concern and does not violate Section 2, Article I of Ohio's Constitution.

{¶ 39} Accordingly, we overrule Smith's second assignment of error.

### Assignment of Error No. III

{¶ 40} In her third assignment of error, Smith asserts that R.C. 4123.931 violates the right to trial by jury in Section 5, Article I of the Ohio Constitution. Specifically, Smith contends that R.C. 4123.931 requires trial courts to deviate from the jury's award by giving the subrogee an amount representing workers' compensation benefits, regardless of whether the benefits were actually duplicated in the jury's verdict. We disagree.

{¶ 41} Section 5, Article I of the Ohio Constitution provides:
The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.
The right to a jury trial is not absolute for all civil litigants; instead, the right is preserved "only for those civil cases in which the right existed before the adoption of the constitutional provision providing the right." *Arrington v. DaimlerChrysler Corp.,* 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 22, citing *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 356, 533 N.E.2d 743, and *Belding v. State ex rel. Heifner* (1929), 121 Ohio St. 393, 396, 169 N.E. 301. Section 5, Article I does not confer a fundamental right to trial by jury for workers' compensation cases because the workers' compensation scheme was enacted to replace the common law claims available to employees. *Arrington,* 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 24. Instead, a workers' compensation claimant's right to a jury trial is statutorily conferred under the workers' compensation scheme and, as such, the alleged violation of that right is subject to rational basis review. Id. at ¶ 29.[7]

---

7. We recognize that the underlying claim giving rise to Smith's workers' compensation claim stemmed from a negligence action, which implicates a fundamental right to trial by jury

{¶ 42} Here, Smith argues that R.C. 4123.931 unconstitutionally infringes upon her right to a jury trial by requiring the trial court to take an amount from a claimant's jury award and give it to the subrogee regardless of whether that amount is actually duplicated in the jury's verdict. However, as we explained above, application of the pro rata formula ensures that the subrogee recovers only that percentage of benefits reflected in the total amount recovered. Moreover, nothing in R.C. 4123.931(D) authorizes the trial court to deviate from the jury verdict and interrogatories when applying the formula. In fact, R.C. 4123.931(D) explicitly states that both R.C. 4123.931(D)(1), requiring application of the formula, and R.C. 4123.931(D)(2), requiring findings of fact in nonjury trials and jury interrogatories in jury trials, apply when claimants proceed to trial. Given that "[i]t is a cardinal rule of statutory construction that a statute should not be interpreted so as to make the statute ineffective" and that "[a] court must construe the statute so as to render it compatible with other related enactments and construe it so as to avoid unreasonable consequences," *Christman v. Washington Court House School Dist.* (1986), 30 Ohio App.3d 228, 231, 30 OBR 386, 507 N.E.2d 384, we construe R.C. 4123.931(D) as requiring the use of the jury interrogatories as guidance in applying the formula. Therefore, R.C. 4123.931 does not require the trial court to take away from or alter the jury's verdict and jury interrogatories. Thus, we find that R.C. 4123.931 does not violate Smith's right to a trial by jury.

{¶ 43} Accordingly, we overrule Smith's third assignment of error.

{¶ 44} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

PRESTON, J., concurs.

SHAW, J., dissents in part and concurs in part.

SHAW, Judge, dissenting in part and concurring in part.

{¶ 45} We have found that R.C. 4123.931(E) does not violate Sections 16 and 19, Article I of the Ohio Constitution insofar as it allows for future estimated payments and establishment of a trust account for such payments. However, in the event that the claimant chooses to forego establishing a trust account under R.C. 4123.931(E), R.C. 4123.931(F) requires them to pay the entire estimated

---

because it was recognized at common law before the inception of Section 5, Article I, Ohio Constitution. *Arrington*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, at ¶ 24. However, even if we analyzed this assignment of error as implicating a fundamental right subject to strict-scrutiny analysis, our holding would remain the same.

future payments to the subrogee within 30 days of receipt of the settlement, judgment, or jury award. In doing so, R.C. 4123.931(F) gives the subrogee a current collectible interest in future estimated payments that the claimant may never actually receive, thereby giving the subrogee a windfall. This provision resembles the process under former R.C. 4123.931, which was deemed unconstitutional in *Holeton v. Crouse Cartage Co.* (2001), 92 Ohio St.3d 115, 123–125, 748 N.E.2d 1111.

{¶ 46} I am not comfortable with the determination of the majority that because a claimant may have alternatives to the Section (F) provisions under the statute, such a fact alone renders the otherwise unconstitutional provisions of R.C. 4123.931(F) constitutional. In my view, R.C. 4123.931(F) violates Sections 16 and 19, Article I of the Ohio Constitution, and this conclusion is unaffected by the fact that a claimant who has received a jury verdict may elect another alternative.

{¶ 47} However, R.C. 4123.931(F) can be severed from the remainder of R.C. 4123.931. Severance of an unconstitutional portion of a statute is appropriate when the test set forth in *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, is satisfied. *Norwood v. Horney,* 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 126, citing R.C. 1.50 and *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 94–95. Under the *Geiger* test, three questions must be answered to determine whether severance is appropriate: "(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?" *Geiger,* 117 Ohio St. at 466, 160 N.E. 28.

{¶ 48} Here, R.C. 4123.931(F) and the remainder of R.C. 4123.931 can be read independently and stand independently upon separation. R.C. 4123.931(E) governs the trust-account option, while R.C. 4123.931(F) governs what happens if the claimant chooses not to set up a trust account and does not involve any other provision of R.C. 4123.931. Moreover, R.C. 4123.931(F) is not so connected with the general scope of R.C. 4123.931 that its severance would thwart the legislative intent of R.C. 4123.931. Indeed, the legislature enacted R.C. 4123.931 in direct response to *Holeton* in order to remedy the constitutional infirmities of former R.C. 4123.931. Although the remainder of R.C. 4123.931 is constitutionally sound, R.C. 4123.931(F) is not and therefore does not aid the overall purpose of the statute. Further, no words or terms need be inserted in order to sever R.C. 4123.931(F) and give effect to the remainder of R.C. 4123.931. Thus, I would find

that severance of R.C. 4123.931(F) is appropriate and strike it from R.C. 4123.931.

{¶ 49} As a result, if a claimant decides not to create a trust account, the subrogee can obtain reimbursement through the same kind of offset or credit against future payments typically used to recoup overpayment of workers' compensation. *Holeton,* 92 Ohio St.3d at 125, 748 N.E.2d 1111, citing R.C. 4123.511(J) and *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149.

{¶ 50} Accordingly, I would sustain Smith's assignment of error insofar as R.C. 4123.931(F) gives the subrogee an impermissible current collectible interest in future estimated payments. On this issue alone, I respectfully dissent from the majority decision. I concur in the remainder of the majority opinion and in the disposition of this case.