**LOGUE, Appellant,**

v.

**LEIS, Appellee.**

[Cite as *Logue v. Leis,* 169 Ohio App.3d 356, 2006-Ohio-5597.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050894.

Decided Oct. 27, 2006.

358

David A. Singleton, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, Assistant Prosecuting Attorney, for appellee.

GORMAN, Presiding Judge.

{¶ 1} Defendant-appellant Derek Logue appeals from the trial court's denial of his petition for reclassification under R.C. 2950.09(F)(2) from a sexual predator to a sexually oriented offender. In one assignment of error, he contends that R.C. 2950.09(F)(2) violates due process and equal protection of the law because it places the burden of persuasion on the offender to demonstrate that he is unlikely to reoffend. We disagree.

{¶ 2} In 2001, Logue pleaded guilty to a sexually oriented offense in Alabama, where he served three years in prison. Solely as the result of his conviction and without a separate hearing on the issue of recidivism, Logue was required under Alabama law to register for life as a sexual offender. He later moved to Cincinnati and notified the Hamilton County Sheriff's Office of his prior conviction. Although he was initially classified as a sexually oriented offender, the sheriff's office later changed Logue's classification to sexual predator, requiring stricter reporting and community-notification requirements. See R.C. 2950.10 and 2950.11. Logue moved for a reclassification under R.C. 2950.09(F)(2). Following a hearing, the trial court denied his motion. Logue now challenges the constitutionality of R.C. 2950.09(F)(2).

{¶ 3} Before addressing the merits of Logue's arguments, we note that "[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

### The Statute

{¶ 4} Under R.C. 2950.09(A), an out-of-state sexual offender convicted of a nonexempt sex offense, and who is required to register for life as a sex offender

in the state where he was convicted, is automatically classified as a sexual predator in Ohio. R.C. 2950.09(F)(2) allows an offender to challenge a sexual-predator classification made under R.C. 2950.09(A). R.C. 2950.09(F)(2) provides that a court may determine that an out-of-state offender is not a sexual predator if the offender proves, by clear and convincing evidence, that the registration requirement of the foreign jurisdiction is not "substantially similar" to Ohio's sexual-predator classification under R.C. Chapter 2950. This court has interpreted the portion of R.C. 2950.09(F)(2) at issue here to require that an offender show, by clear and convincing evidence, that he is not likely to commit a sexually oriented offense in the future. *State v. Pasqua*, 157 Ohio App.3d 427, 2004-Ohio-2992, 811 N.E.2d 601, at ¶ 22.

## Due Process

{¶ 5} Logue first argues that R.C. 2950.09(F)(2) violates his procedural due process rights under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. The state and federal constitutional provisions are coextensive. *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 544–545, 21 O.O. 422, 38 N.E.2d 70.

{¶ 6} Due process is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer* (1972), 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484. The United States Supreme Court has held that whether procedural due process has been met "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18.

{¶ 7} Logue cites *E.B. v. Verniero* (C.A.3, 1997), 119 F.3d 1077, in support of his position that due process requires that the government bear the burden of persuasion on whether an out-of-state offender is likely to reoffend. In *Verniero*, the court applied the *Mathews* test to New Jersey's version of Ohio's sexual-offender classification law. The court determined that in an *initial* classification hearing to determine whether a sexual offender is likely to reoffend and to determine the corresponding community-notification requirements, due process requires that the state bear the burden of persuasion. Id. at 1109. We find this case to be distinguishable. The purpose of an R.C. 2950.09(F)(2) hearing is to determine whether an offender already convicted of a nonexempt offense and already required to register for life as a sexual offender in another

**360**

state should be exempt from Ohio's lifetime registration and notification requirements. And applying the *Mathews* test to this issue, we find no due-process violation.

{¶ 8} The *Mathews* test is primarily concerned with weighing the public and private interests affected by the challenged procedure. Id., 424 U.S. at 334, 96 S.Ct. 893, 47 L.Ed.2d 18. Citing *Verniero,* supra, Logue argues that the first *Mathews* factor, an examination of the private interest affected, weighs in his favor. Logue contends that the "private interest" in this case is "very substantial" because community notification puts the offender's "livelihood, domestic tranquility, and personal relationships with all around him in grave jeopardy." See *Verniero,* 119 F.3d at 1107. We agree that sexual-predator registration and notification requirements have "a profound impact on a defendant's life." See *State v. Eppinger* (2001), 91 Ohio St.3d 158, 162, 743 N.E.2d 881, citing *State v. Gowdy* (2000), 88 Ohio St.3d 387, 398, 727 N.E.2d 579. In *State v. Cook* (1998), 83 Ohio St.3d 404, 413, 700 N.E.2d 570, the Supreme Court recognized that community-notification requirements may result in offenders becoming "ostracized from society." And in *Pasqua,* this court implicitly recognized that an individual has a sufficient liberty interest at stake in an R.C. 2950.09(F)(2) proceeding to invoke the due-process protections of notice and an opportunity to be heard. *Pasqua,* supra, at ¶ 22–24, 811 N.E.2d 601. But this determination does not end our analysis.

{¶ 9} The second *Mathews* factor, i.e., the risk of erroneous deprivation of the private interest through the procedures used, weighs in favor of the government. Logue again cites *Verniero* in support of his position that the burden of persuasion must fall on the state. But R.C. 2950.09(F)(2) applies only to those offenders who have already been convicted of a nonexempt offense and who are already required to register for life in another jurisdiction. Presumably, these individuals have had due process afforded to them on the issue of dangerousness or recidivism.[1] Although the specifics of community-notification requirements vary from state to state, a sexual offender in an R.C. 2950.09(F)(2) hearing is essentially attempting to change the status quo as it concerns the "private interest" identified above. We therefore find the risk of erroneous deprivation to be low by placing the burden of persuasion on the offender, because an offender in an R.C. 2950.09(F)(2) hearing has already been "deprived" of the interest involved, albeit in a different jurisdiction. Cf. *State v. Newberry* (1991), 77 Ohio

---

1. Logue argues that the state should have the burden of proving that he is likely to reoffend because, under Alabama law, he was required to register for life by virtue of his conviction without the benefit of a hearing. Logue's argument is more properly directed to an attack on the constitutionality of the registration requirements in Alabama, over which we have no jurisdiction. To date, Alabama's registration and notification requirements have not been struck down as unconstitutional.

App.3d 818, 821, 603 N.E.2d 1086 (when an individual suffers no real loss, there is little need for procedural safeguards).

{¶ 10} As to the third *Mathews* factor, we find the state's interest to be compelling. The Ohio legislature has recognized that the protection of members of the public from sex offenders is "a paramount governmental interest" and that Ohio's registration and notification requirements further this goal. See R.C. 2950.02(A)(1) and (A)(2); see, also, *Eppinger,* supra, 91 Ohio St.3d at 165, 743 N.E.2d 881, citing R.C. 2950.09(B) (R.C. Chapter 2950 was enacted to protect the safety and general welfare of the people of this state); *Cook,* supra, 83 Ohio St.3d at 416–417, 700 N.E.2d 570 (R.C. Chapter 2950 serves the purpose of protecting the general public from released sex offenders). An out-of-state sexual offender already convicted of a nonexempt offense and deemed dangerous enough to register for life by a court of competent jurisdiction may very well pose a threat to the safety of Ohio's citizens if he or she moves to this state. The state, therefore, has a substantial interest in protecting the public from such a threat.

{¶ 11} The third *Mathews* factor also requires this court to examine the administrative and fiscal costs associated with the "substitute procedural requirement" proposed by Logue. See *Mathews,* 424 U.S. at 335, 96 S.Ct. 893, 47 L.Ed.2d 18. Logue argues that the state would not incur fiscal or administrative hardship if it carried the burden of persuasion under R.C. 2950.09(F)(2), because prosecutors are well equipped to obtain the type of evidence required to demonstrate the likelihood of recidivism under R.C. Chapter 2950. Logue offers little in support of his argument. But even if we assume that Logue's contention is correct, it is of no consequence, because we find that the other *Mathews* factors weigh heavily in favor of the state.

{¶ 12} In sum, we find that the public interest outweighs the private interest as it pertains to the challenged procedure. We therefore hold that due process is not violated when an out-of-state sexual offender, already convicted of a nonexempt offense and already required to register for life in another state, is required to bear the burden of persuasion on the issue of recidivism when he or she petitions for reclassification under R.C. 2950.09(F)(2). And we reaffirm our holding in *Pasqua,* supra, that due process is met in an R.C. 2950.09(F)(2) hearing when a sex offender has notice and an opportunity to be heard.

## Equal Protection

{¶ 13} Logue also contends that R.C. 2950.09(F)(2) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it treats out-of-state sexual offenders differently from those who have committed sexual offenses in Ohio. This argument has no merit.

{¶ 14} A statutory classification that does not involve a suspect class or a fundamental right does not violate the Equal Protection Clause if it bears a rational relationship to a legitimate governmental interest. *Heller v. Doe* (1993), 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257; *Nordlinger v. Hahn* (1992), 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1; see, also, *Menefee v. Queen City Metro* (1990), 49 Ohio St.3d 27, 29, 550 N.E.2d 181. Out-of-state sexual offenders already convicted of a nonexempt offense and already required to register for life do not constitute a "suspect class," nor do registration requirements involve a fundamental right. We therefore apply a rational-basis test to the statute at issue.

{¶ 15} Logue seems to suggest that it is unfair that he must bear the burden of persuasion under R.C. 2950.09(F)(2) because he committed his offense in a state where he was not afforded a hearing on the issue of recidivism. But under the rational-basis test, a statutory classification does not offend the Constitution simply because it results in some inequality. *Dandridge v. Williams* (1970), 397 U.S. 471, 501–502, 90 S.Ct. 1153, 25 L.Ed.2d 491. A statutory classification subject to rational-basis review must be upheld against an equal-protection challenge if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Communications Comm. v. Beach Communications, Inc.* (1993), 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211. As we have previously determined, Ohio has an interest in protecting its citizens from sexual offenders who are likely to reoffend. It is reasonable to assume that an out-of-state offender convicted of a nonexempt offense and already subject to lifetime reporting requirements is dangerous. Consequently, treating this class of out-of-state offenders differently from those who have committed sexual offenses in Ohio—and who have not yet been classified—does not violate the Equal Protection Clause of the Fourteenth Amendment.

{¶ 16} Because Logue cannot demonstrate beyond a reasonable doubt that R.C. 2950.09(F)(2) is unconstitutional, we overrule his assignment of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

HENDON, J., concurs separately.

HENDON, J., concurring.

{¶ 17} I write separately, not because I disagree with the majority opinion—in fact I concur in the conclusions drawn therein—but because I am troubled by the

classification process that initially occurs when of an out-of-state offender relocates to Ohio.

{¶ 18} The record is necessarily silent as to the events that triggered Logue's reclassification from the original "sexually oriented offender" status to "sexual predator," or as to how he was initially classified as a sexually oriented offender upon moving to Ohio. But from representations made in oral argument, this court can presume that this order of reclassification and lifetime registration was made internally by the Hamilton County Sheriff's Office based on the provisions of R.C. 2950.09(A). Logue raises the issue that because a typical sex-offender registration hearing was never conducted—nor was it provided by law—in Alabama, the state of Ohio should bear the burden of proving that he is likely to reoffend and is thus deserving of the highest level of classification. But it appears that the real flaw in the classification procedure is that with respect to an out-of-state relocating offender, the current internal process of classification is administrative in nature and not subject to review except when triggered by the offender's petition for reclassification. It is impossible to discern as a reviewing court what process is used to attempt to "match" the out-of-state offense and registration requirement to their counterparts under Ohio law. Thus, the offender comes to the court already bearing the "label" of sexual predator and begins an uphill climb to overcome what amounts to an application of a "full faith and credit" acceptance of the order made by another state, often—as here—under totally different standards than those enacted in this state.

{¶ 19} In short, at the very beginning of the process for an out-of-state relocating offender, an internal administrative procedure is employed with minimal legislative guidance and without a hearing. Since that specific issue is not raised in this appeal, I decline to rule on its legality on equal-protection or any other grounds, but I would suggest that legislative refinement of this initial classification procedure set forth in R.C. 2950.09 for out-of-state offenders relocating to Ohio would be welcome.