[Cite as *Homeless Charity v. Akron Bd. of Zoning Appeals*, 2022-Ohio-1578.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

HOMELESS CHARITY, et al.

    Appellants

    v.

AKRON BOARD OF ZONING APPEALS

    Appellee

C.A. No.    30075

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2019-02-0684

DECISION AND JOURNAL ENTRY

Dated: May 11, 2022

CALLAHAN, Judge.

{¶1}    Appellants, The Homeless Charity, Sage Lewis LLC, and Sage Lewis, appeal an order of the Summit County Court of Common Pleas that affirmed the denial of a use variance by the Akron Board of Zoning Appeals. This Court affirms.

I.

{¶2}    On September 17, 2018, Akron City Council denied a conditional use permit sought by The Homeless Charity, Sage Lewis LLC, and Sage Lewis to allow a "campground/tent community" for the homeless at 15 Broad Street, a property owned by Sage Lewis LLC.[1] At the same time, the city created an "action plan" involving Mr. Lewis, The Homeless Charity, and

---

[1] The Summit County Court of Common Pleas dismissed a subsequent administrative appeal, concluding that it lacked jurisdiction because the appeal was not properly perfected. This Court affirmed. *See generally The Homeless Charity v. Akron*, 9th Dist. Summit No. 29334, 2019-Ohio-5330.

Continuum of Care to provide for the transition of those who had been living in the tent community to alternative housing. On December 6, 2018, however, the city issued a "Notice of Violation/Order to Comply" to Mr. Lewis and Sage Lewis LLC, alleging a violation Section 153.240(F) of the Akron Zoning Code because tents remained on the property, and because "[t]he operation of a campground is not permitted in a residential use district."

{¶3} On December 21, 2018, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis appealed to the Board of Zoning Appeals ("BZA"). In so doing, they represented that they would comply with the December 6, 2018, notice because those who had been living in tents were obtaining other housing. Nonetheless, they also noted that they "appeal[ed] the [notice] so that they may provide tents on private property as emergency, potentially life-saving shelter to the most destitute members of the community[]" and sought a variance "to allow them to use tents when [their] own indoor housing options, combined with options from other providers, prove insufficient and the only realistic alternative for a person in immediate need is the streets." They characterized the collaboration with the city and the Continuum of Care that resulted from the earlier proceedings as "a great success" but also noted that it "provide[d] the context for the variance [they] now seek" and stated that the variance "differ[ed] in certain material respects from the conditional-use application." Specifically, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis represented that they requested a variance to permit fewer tents for a specific and limited purpose: "emergency, potentially lifesaving shelter (in the absence of other options)[.]"

{¶4} A proposed site plan submitted in support of the appeal and request for a variance illustrated their proposal with seven tents located in a triangular area formed by the southeastern property boundary and an existing structure containing bathrooms, laundry facilities, and a handwashing station. In support of their appeal and request for a variance, The Homeless Charity,

Sage Lewis LLC, and Mr. Lewis argued that "[t]he use of tents as temporary, potentially lifesaving shelter is not specifically prohibited[]" and, consequently, that the BZA had the authority to grant the variance under Section 153.404(I) of the Akron Zoning Code.

{¶5}    The BZA conducted a public hearing on the appeal and request for a variance on January 30, 2019.  The Akron City Planning Commission opposed the request for a variance, arguing that because a "campground" was a prohibited use, the BZA did not have the authority to grant a use variance.  In the alternative, the Planning Commission maintained that the variance did not meet the requirements for granting a variance under the zoning code.  At the conclusion of the hearing, the BZA denied the request for a variance.

{¶6}    On February 21, 2019, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis filed an administrative appeal to the Summit County Court of Common Pleas.  They moved to allow additional evidence and permit discovery, citing R.C. 2506.03 and arguing that the administrative record was insufficient to permit them to develop arguments that the zoning code was unconstitutional as applied.  The BZA opposed the motion arguing, in part, that R.C. 2506.03 does not contemplate supplementation of the record in order for an appellant to develop constitutional arguments on appeal.  On January 15, 2020, the trial court granted the motion to conduct discovery and supplement the record solely with respect to the constitutional arguments, rejecting the city's position that those arguments should have been raised before the BZA for the purpose of developing the record.  Nine days later, however, the parties filed a joint notice that they agreed to stay discovery "[p]ursuant to the discussion from the January 15, 2020 teleconference * * * until certain legal issues are resolved."

{¶7}    The parties subsequently filed their respective briefs.  On July 14, 2021, the trial court affirmed the decision of the BZA with respect to the variance.  The trial court also concluded

4

that only Sage Lewis LLC had standing to assert constitutional challenges and rejected the remaining constitutional challenges asserted. The Homeless Charity, Sage Lewis LLC, and Mr. Lewis appealed, raising three assignments of error that are rearranged for purposes of disposition.

## II.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN UPHOLDING THE VARIANCE DENIAL.

{¶8} In their second assignment of error, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis have argued that the trial court erred by upholding the BZA's denial of their variance request. This Court does not agree.

{¶9} Under R.C. 2506.04, a trial court considering an administrative appeal reviews the order at issue to determine whether it is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." "R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 24, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979). The scope of this Court's review of the trial court decision, however, is "narrower and more deferential":

> [T]he standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law.

*Cleveland Clinic Found.* at ¶ 25, 30. When reviewing a trial court's decision in an administrative appeal, this Court must determine whether, as a matter of law, the trial court's decision is

unsupported by a preponderance of reliable, probative, and substantial evidence. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 14, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). *See also Cleveland Clinic Found.* at ¶ 25 ("The courts of appeals may review the judgments of the common pleas courts only on questions of law; they do not have the same power to weigh the evidence.").

{¶10} Section 153.404 of the Akron Zoning Code[2] describes the BZA's jurisdiction with respect to variances:

> The Board of Zoning Appeals may, on appeal in a specific case, after public notice and hearing, vary the application of certain of the regulations established in this Zoning Code in harmony with their general purpose and intent. These variances shall be authorized only when the Board finds adequate evidence that they will meet the criteria set forth in [Sections 153.474 and 153.476 of the Akron Zoning Code]. The Board may enact sufficient and reasonable conditions and safeguards as it may deem necessary to assure the proper development of the variances consistent with its powers.

The BZA's jurisdiction to grant a variance is limited to twenty-four circumstances specifically enumerated in the ordinance. *Id.* These circumstances include use variances with respect to "[a]ny *use* in any use district that is not specifically prohibited and that is in general keeping with, and appropriate to, the uses authorized in such district[.]" (Emphasis added.) Section 153.404(I) of the Akron Zoning Code. A "use" is "[t]he specific purpose for which a building or premises is or may be occupied." Section 153.140(B) of the Akron Zoning Code. Consequently, the starting point for analyzing a request for a use variance is the nature of the use requested and whether that use is "specifically prohibited" within the district at issue. *See* Section 153.404(I) of the Akron Zoning Code.

---

[2] The Akron Zoning Code underwent significant revision between 2018 and the present. This opinion refers to the version in effect when the proceedings at issue occurred.

**{¶11}** Although the property involved in this case straddles two different zoning classifications, it is undisputed that the portion of the property at issue is located in a U1 residential use district and an A1 area district. Section 153.230 of the Akron Zoning describes uses that are prohibited in every use district. An examination of prohibited uses, however, does not end with that ordinance. Section 153.240 of the Akron Zoning Code also describes the uses that are permitted and prohibited specifically within a U1 residential use district. According to Section 153.240(A), single-family and two-family dwellings are permitted depending on the area district and, "[s]ubject to the provisions of [Section 153.404 of the Akron Zoning Code] a school, public library, public museum, memorial building or community center building[]" may also be permitted. Conversely, Section 153.240(F) restricts the uses within a U1 residential use district, providing in part:

> Restriction of Uses. Within a Class U1 District, *no structure or premises shall be used*, and no structure shall be erected *which is to be used*, for other than a Class U1 Use. In any portion of a Class U1 District that is within a Class A1 District, no building or premises *shall be used*, and no building shall be erected *to be used*, as a dwelling for more than one family. No separate dwelling unit of a two-family dwelling shall be occupied by more than one family or a maximum of five people.

(Emphasis added.) This ordinance, therefore, generally prohibits uses outside of those permitted in a U1 residential use district and specifically prohibits multifamily dwellings within U1 residential districts that are also classified as A1 area districts.

**{¶12}** The trial court relied upon a different ordinance, Section 153.240(G) of the Akron Zoning Code, in its determination that the erection of multiple tents on fixed platforms was prohibited in a U1 residential use district. Section 153.240(G) does not pertain to uses but, instead, limits the number of buildings that may be placed on a lot within a U1 residential use district to one. A "building" is defined as "[a]ny structure used for the support, enclosure, shelter or protection of persons, animals, chattels or property." Section 153.140(B) of the Akron Zoning

Code. A "structure" is "[a]nything placed, constructed or erected on the ground or attached to something having a fixed location on the ground[]" including, but not limited to, "buildings, house trailers, semitrailers, earth station antennas, walls, towers, fences and outdoor advertising devices." *Id.* Buildings and structures are distinct from the uses that occur within them. *See generally* Section 153.140 of the Akron Zoning Code.

{¶13} The Homeless Charity, Sage Lewis LLC, and Mr. Lewis did not request a variance from the requirements of Section 153.240(G), but a *use* variance pursuant to Section 153.404(I).[3] The trial court's determination that Section 153.240(G) provided a specific prohibition that limited the BZA's jurisdiction to grant a use variance under Section 153.404(I) was, therefore, incorrect. Similarly, the characterization of the variance request as a proposal for a "campground" in the proceedings before the BZA does not lead to the conclusion that the requested use is specifically prohibited because there is no specific prohibition on campgrounds in U1 residential use districts.

{¶14} Because the use variance request at issue is not specifically prohibited by the Akron Zoning Code, the next step in the analysis is whether the requested use "is in general keeping with, and appropriate to, the uses authorized in" a U1 residential and A1 area district. Section 153.404(I) of the Akron Zoning Code. Although the trial court determined that the

---

[3] This Court, consequently, makes no determination with respect to whether the BZA is authorized to grant a variance from the requirements of Section 153.240(G).

requested use was specifically prohibited, it also considered, in the alternative, whether this requirement was met.

{¶15} As noted above, the portion of the property at issue is a U1 residential use and A1 area district. As the trial court acknowledged, "[t]he neighborhood certainly has a mixed use[]" given that surrounding properties are zoned differently. Nonetheless, the threshold requirement of Section 153.404(I) of the Akron Zoning Code is whether the proposed use variance "is in general keeping with, and appropriate to, the uses authorized in" the zoning classification *of the subject property*. That property is presently zoned for residential use, and it lies adjacent to neighboring residential properties including Annunciation Terrace and individual homes.

{¶16} The trial court also referenced the recommendations of the Akron Planning Commission and the accompanying report that was submitted to the BZA. That report recommended that the BZA deny the variance, noting that multiple tents within a residential zoning district adjacent to an apartment building was "not harmonious or appropriate in appearance" for a residential neighborhood. The trial court also noted that the addition of multiple tents designed to house individuals overnight on the subject property created circumstances different in character from the operation of a drop-in facility located in a permanent structure during daytime hours on the portion of the property that was not zoned for residential use. Finally, the trial court observed that although The Homeless Charity, Sage Lewis LLC, and Mr. Lewis argued that the proposed tents would be positioned in a manner that would limit visibility, it is the character of the use itself—and not the aesthetics of design—that are significant for purposes of Section 153.404(I) of the Akron Zoning Code.

{¶17} Although The Homeless Charity, Sage Lewis LLC, and Mr. Lewis maintain that the BZA and the trial court wrongly disregarded the fact that their request for a variance was

different in character from the earlier request for a conditional use permit, neither the detailed narrative submitted in support of their request nor the proposed site plan support this distinction. To that point, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis also argue that the trial court erred by considering the past effects of housing homeless individuals on the property in isolation from the changes that they now propose. The context within which the trial court noted that the BZA was justified in considering those possible effects was part of its determination that the proposed use variance was not in keeping with the character of a residential use district and, in that context, it was not improper for the trial court to do so.

{¶18} The Homeless Charity, Sage Lewis LLC, and Mr. Lewis direct this Court's attention, as they directed the trial court's attention, to the numerous affidavits documenting the positive effects that their efforts have had on the lives of homeless individuals and the voluminous record of emails provided to the city in support of their work. This Court does not seek to diminish the profound effect that The Homeless Charity, Sage Lewis LLC, and Mr. Lewis appear to have had on the lives of the individuals who provided affidavits to the BZA, nor do we dismiss the plight of the homeless in Akron as insignificant. But this Court is tasked in an administrative appeal from a zoning decision to consider the Akron Zoning Code as written, and we are constrained by our standard of review to do so in accordance with established precedent.

{¶19} Having done so, this Court concludes that the trial court's decision upholding the BZA's denial of the variance is supported by a preponderance of reliable, probative, and substantial evidence as a matter of law. *Independence*, 142 Ohio St.3d 125, 2014-Ohio-4650, at ¶ 14, citing *Kisil*, 12 Ohio St.3d at 34. Accordingly, the second assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 3**

THE TRIAL COURT ERRED IN HOLDING THAT APPELLANTS FAILED TO STATE AS-APPLIED SUBSTANTIVE DUE-PROCESS CLAIMS UNDER THE FEDERAL AND STATE CONSTITUTIONS.

{¶20} In their third assignment of error, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis argue that the trial court erred by rejecting their argument that the Akron Zoning Code is unconstitutional as applied in this instance. This Court does not agree.

{¶21} As an initial matter, this Court notes that The Homeless Charity, Sage Lewis LLC, and Mr. Lewis have framed this assignment of error in terms of a motion to dismiss pursuant to Civ.R. 12(B)(6), arguing that "[a]t a January 31 status conference, the parties and the court agreed to use a quasi-12(B)(6) procedure to determine whether Appellants [could] state a claim that the BZA decision violated their substantive due-process rights." Although it is clear that the trial court ordered the parties to brief the constitutional issues and held discovery in abeyance, no agreement such as the one referenced by The Homeless Charity, Sage Lewis LLC, and Mr. Lewis is reflected in the record. Moreover, in the context of an R.C. Chapter 2506 appeal, "a court of common pleas * * * 'performs an appellate function.'" *AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, ¶ 15, quoting *Dvorak v. Athens Mun. Civ. Serv. Comm.*, 46 Ohio St.2d 99, 103 (1976). For this reason, Civ.R. 12(B)(6) is inapplicable. *Lupo v. Columbus*, 10th Dist. Franklin No. 13AP-1063, 2014-Ohio-2792, ¶ 18. Consequently, this Court must review the constitutional arguments within the framework of administrative appeals under R.C. Chapter 2506.

{¶22} When a party challenges the constitutionality of a zoning ordinance, two fundamental principles govern our review: zoning ordinances are presumed to be constitutional, and a party that challenges the constitutionality of a zoning ordinance must bear the burden of proving beyond fair debate that the ordinance is unconstitutional. *Goldberg Cos., Inc. v. Richmond*

*Hts. City Council*, 81 Ohio St.3d 207, 209 (1998). *See also Jaylin Invests., Inc. v. Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, ¶ 13. The constitutionality of a zoning ordinance may be asserted as a facial challenge or as a challenge to the validity of the ordinance with respect to a particular piece of property. *Jaylin Invests., Inc.* at ¶ 11-12. "A facial challenge asserts that there is no conceivable set of circumstances in which the statute would be valid. [*Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 26.] An as-applied challenge, on the other hand, alleges that application of the statute in a particular factual context is unconstitutional." *Simpkins v. Grace Brethren Church of Delaware, Ohio*, 149 Ohio St.3d 307, 2016-Ohio-8118, ¶ 20. The proponent of an as-applied constitutional challenge "has the burden of presenting a presently existing state of facts that make the [ordinance] unconstitutional under the appropriate level of scrutiny." *Eppley v. Tri-Valley Loc. School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, ¶ 13. *See also Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 38, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329 (1944), paragraph six of the syllabus ("[W]here statutes are challenged on the ground that they are unconstitutional as applied to a particular set of facts, the party making the challenge bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statutes unconstitutional and void when applied to those facts.").

{¶23} A challenge to the constitutionality of a zoning ordinance as applied, therefore, considers "'whether the ordinance, in proscribing a landowner's proposed use of his land, has any reasonable relationship to the legitimate exercise of police power by the municipality.'" *Jaylin Invests., Inc.* at ¶ 20, quoting *Mobil Oil Corp. v. Rocky River*, 38 Ohio St.2d 23 (1974), syllabus. A property owner may raise an as-applied constitutional challenge in the context of an

administrative appeal pursuant to R.C. Chapter 2506.[4] *Mobil Oil Corp.* at 26. *See also Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St.3d 452, 453 (1993).

**{¶24}** The Homeless Charity, Sage Lewis LLC, and Mr. Lewis first argued that denial of the variance violated their rights under Section 16, Article 1 of the Ohio Constitution to due course of law by depriving them of a property interest in sheltering homeless individuals in tents, noting that they "ha[d] used their property in the past and intend to use their property in the future" for the same purpose.[5] A landowner obtains a property interest in a variance, however, once it is *granted* because it "gives the landowner the ability to use his land in a way that would be otherwise prohibited by the zoning [code]." *Scarnecchia v. Austintown Twp.*, 7th Dist. Mahoning No. 04 MA 253, 2005-Ohio-4504, ¶ 14, citing *Nunamaker v. Bd. of Zoning Appeals of Jerusalem Twp.*, 2 Ohio St.3d 115, 118 (1982). Further, as described above, the trial court's decision upholding the BZA's denial of the variance is supported by a preponderance of reliable, probative, and substantial evidence as a matter of law. The application of the Akron Zoning Code in this instance bore a reasonable relationship to Akron's exercise of its police power in regulating the uses to which the property at issue may be put. *See Jaylin Invests., Inc.* at ¶ 20, quoting *Mobil Oil Corp.* at syllabus.

**{¶25}** The Homeless Charity, Sage Lewis LLC, and Mr. Lewis also argued that the denial of the variance violated their right to substantive due process under Section 16, Article 1 of the Ohio Constitution and the Fourteenth Amendment to the U.S. Constitution by depriving them of "entwined life and liberty interests in rescuing the homeless from grave peril with tents at 15 Broad Street." As they further explain on appeal, "[t]hese are entwined in the sense that the Charity's

---

[4] In this respect, R.C. Chapter 2506 administrative appeals of zoning decisions are distinguishable from cases that arise from administrative bodies. *See*, *e.g.*, *King v. Ohio Dept. of Job and Family Servs.*, 9th Dist. Summit No. 29198, 2019-Ohio-2989, ¶ 14.

[5] The Homeless Charity, Sage Lewis LLC, and Mr. Lewis did not articulate a procedural due process argument under either the Ohio Constitution or the U.S. Constitution.

homeless members have a right to be rescued when facing life-threatening danger. On the flip side, all three Appellants have a liberty interest in performing that rescue." Because each of these arguments is premised upon their position that Section 16, Article 1 of the Ohio Constitution and the Fourteenth Amendment include a right to be rescued, our analysis must begin at that point.[6]

{¶26} In support of their argument, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis direct this Court's attention to *Ross v. United States*, 910 F.2d 1422 (7th Cir.1990). In *Ross*, the plaintiff asserted a claim under 42 U.S.C. 1983 and the Fourteenth Amendment alleging that a sheriff's deputy "violated [her minor son's] civil rights by interposing state power to prevent rescue." *Id*. at 1425. The case resulted from the drowning death of the youth at a municipal event along the shores of Lake Michigan. *Id*. at 1424-1425. Numerous individuals, including lifeguards, firefighters, civilians, and a police officer, responded to a call for aid. *Id*. at 1424. Nonetheless, they were ordered to desist by a deputy sheriff who threatened them with arrest pursuant to a department policy that prohibited civilian rescue and provided that only divers from the local fire department could rescue in the waters of Lake Michigan. *Id*. at 1425. The deputy's actions resulted in significant delay. *Id*.

---

[6] As noted above, the trial court determined that The Homeless Charity did not have standing to assert constitutional claims on behalf of its members. Because our analysis must begin by considering whether there is a right to be rescued under these circumstances, we proceed by assuming, without deciding, that each of the appellants had standing to raise their respective challenges. *See Nelson v. Mohr*, 10th Dist. Franklin No. 13AP-130, 2013-Ohio-4506, ¶ 5.

**{¶27}** The trial court dismissed the plaintiff's claims. *Id*. at 1426. On appeal, the Seventh Circuit Court of Appeals noted, as an initial matter, that the municipality had no constitutional duty to provide rescue services. *Id*. at 1428. Turning to the actions of the deputy, however, the Court characterized the policy at issue as one of "arbitrarily cutting off private sources of rescue without providing a meaningful alternative." *Id.* at 1431. The Court concluded that, viewing the allegations in the complaint as true, the policy upon which the deputy's actions were based "arbitrarily denied [the deceased] his fourteenth amendment right to life[]" for that reason. *Id*. at 1430. In reaching this conclusion, the Seventh Circuit noted that it was the decedent's "constitutionally protected right to life" itself that placed the claims within the ambit of 42 U.S.C. 1983. *Id*. at 1431. The Court also emphasized that it was the arbitrary nature of the county's alleged policy determination that led to its conclusion:

> We take the policy alleged in the plaintiff's complaint at its face value. The plaintiff alleges that the county had a policy that prevented rescue even of persons "in danger of drowning." Thus, as portrayed in the plaintiff's complaint, [the county's] policy not only tolerated a risk that someone might drown but actually contemplated that some persons would die for the sake of preventing harm to private rescuers. Protecting the lives of private rescuers rather than the lives of those drowning in the lake is an arbitrary choice. While no one suggests that the county desired to see people die in the waters of Lake Michigan, its alleged policy demonstrates a disregard for the value of the lives lost because of its enactment.

*Id*. Summarizing its conclusion, the Seventh Circuit reiterated this point: "the state cannot *arbitrarily* assert its power so as to cut short a person's life." (Emphasis added.) *Id*. at 1433.

**{¶28}** Thus, in *Ross*, the Seventh Circuit did not recognize a constitutional right to be rescued under the Fourteenth Amendment—or to rescue—but acknowledged that *arbitrary* state action may unconstitutionally deprive an individual of the right to life for purposes of the Fourteenth Amendment. *See id. Accord Beck v. Haik*, 6th Cir. No. 99-1050, 2000 WL 1597942, *4 (Oct. 17, 2000). Even apart from the fact that the situation presented by this case is readily

distinguishable, this Court cannot conclude that the Akron Zoning Code's applicability in this instance is arbitrary. To the contrary, as the record demonstrates, there is a reasonable relationship to the legitimate exercise of the city's police power in regulating the uses to which the property at issue may be put. *See Jaylin Invests., Inc.*, 107 Ohio St.3d 339, 2006-Ohio-4, at ¶ 20, quoting *Mobil Oil Corp.*, 38 Ohio St.2d 23 at syllabus. Because the assertion that the Fourteenth Amendment guarantees a complementary right to engage in rescue is premised upon the same foundation, it fails as well.

{¶29} The Homeless Charity, Sage Lewis LLC, and Mr. Lewis also argued that Section 16, Article 1 of the Ohio Constitution also encompasses the right to be rescued from danger and, conversely, the right to engage in rescue. In support of their argument on appeal, they assert not only that the Ohio Constitution guarantees these rights, but that it "protects life, liberty, and property interests better than the Fourteenth Amendment[]" and is subject to analysis "under a more stringent standard." The Supreme Court of Ohio, however, has recognized that the "due course of law" clause contained in Section 16, Article 1 of the Ohio Constitution, is the equivalent of the "due process of law" clause in the Fourteenth Amendment. *Arbino*, 116 Ohio St.3d 468, 2007-Ohio-6948, at ¶ 48, citing *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 422-423 (1994), citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544 (1941). Consequently, the as-applied challenges raised under the Ohio Constitution must fail for the same reasons articulated above.

{¶30} The third assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED IN HOLDING THAT APPELLANTS SAGE
LEWIS AND THE HOMELESS CHARITY LACKED STANDING.

**{¶31}**  In their first assignment of error, The Homeless Charity, Sage Lewis LLC, and Mr. Lewis argue that the trial court erred by determining that The Homeless Charity and Mr. Lewis did not have standing.  Because this Court has determined that their second and third assignments of error do not have merit, any possible error in this regard is not prejudicial to The Homeless Charity and Mr. Lewis, and this assignment of error is, therefore, moot.  *See Cincinnati Golf Mgt., Inc. v. Testa*, 132 Ohio St.3d 299, 2012-Ohio-2846, ¶ 15; *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Ohio Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, ¶ 60; *Fowler v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 16AP-867, 2017-Ohio-7038, ¶ 23; *Nelson*, 2013-Ohio-4506, at ¶ 5.  *See generally Heaney v. Crystal Clinic Orthopaedic Ctr., LLC*, 9th Dist. Summit No. 29579, 2020-Ohio-894, ¶ 6 (noting that an issue is moot when it is impossible for this Court to grant relief).

III.

**{¶32}**  The second and third assignments of error are overruled.  The first assignment of error is moot.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

JEFFREY ROWES, Attorney at Law, for Appellants.

DIANA K. SIMPSON, Attorney at Law, for Appellants.

REBECCA SREMACK, Attorney at Law, for Appellants.

EVE V. BELFANCE, Director of Law, and JOHN R. YORK, Assistant Director of Law, for Appellee.

BRIAN D. BREMER, Attorney at Law, for Appellee.